UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| CORY B. LANGE, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | Cause No. 4:20-cv-160-RLM-DML |
| v. | ) | |
| | ) | |
| ANCHOR GLASS CONTAINER | ) | |
| CORPORATION, | ) | |
| | ) | |
| *Defendant* | ) | |

<u>OPINION AND ORDER</u>

Plaintiff Cory Lange has sued Anchor Glass Container Corporation for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Indiana Civil Rights Act, IND. CODE § 22-9-1-1 *et seq.* Mr. Lange alleges that Anchor unlawfully discriminated against him based on his race when it didn't hire him. Anchor has moved for summary judgment. For the following reasons, the court grants Anchor's motion. [Doc. No. 53].

## I.   BACKGROUND

Anchor is a glass packaging products manufacturer with a facility in Lawrenceburg, Indiana. In February 2018, Anchor had three open Selector Packer positions and was accepting applications. Eleven people applied, one of whom was Cory Lange—an African American man.

The Selector Packer position is an entry-level position intended to be staffed with individuals who Anchor believes could advance to other roles within

1

the organization. Anchor sees a diverse work background in manufacturing or warehouse experience, as well as post-secondary education, as indicative of a candidate's ability to mature into other roles. A successful interview is critical to ensuring that the candidate is a good fit for the position.

Human Resources Specialist Katie Petty was solely responsible for selecting candidates to interview and hire for the Selector Packer positions, though other members of management participated in the interviews and provided feedback. Ten of the eleven applicants were interviewed in-person, including Mr. Lange. Ms. Petty wasn't there for Mr. Lange's interview because she was attending a previously scheduled workplace training, but a panel of production managers interviewed Mr. Lange on March 14. Ms. Petty was present for the interviews of three other applicants who were ultimately hired.

After Mr. Lange's in-person interview, the panel was impressed with him and recommended that Ms. Petty conduct a follow-up interview. Ms. Petty had already identified three candidates as "presumptive hires," but given the panel's request, she set a follow-up telephonic interview to see if Mr. Lange could persuade her to revisit her decision.

Mr. Lange challenges Ms. Petty's account, saying that it's logically impossible that Ms. Petty could've already identified the three hirees because she didn't interview two of them until March 15—the day after Mr. Lange's in-person interview. Ms. Petty attested in her declaration that "Prior to Mr. Lange's in-person interview, I had already identified three applicants that I

2

intended to extend job offers to." Ms. Petty later clarified in her deposition that "in-person" was a typographical error, and the phrase should read "Prior to Mr. Lange's telephone interview."

Ms. Petty says that during the telephonic interview, Mr. Lange spoke in detail about his felony conviction for dealing a prescription narcotic medication, saying he was caught because a confidential informant worked with the police. She says that Mr. Lange claimed he'd do it all again but next time, he'd make sure he wasn't dealing with a confidential informant. Ms. Petty didn't interpret these comments as a joke, but even if they were, she thought they were inappropriate for a job interview. Mr. Lange testified that he couldn't remember whether he discussed his criminal history with Ms. Petty during the interview. He later amended that statement in a declaration, saying that he didn't make those comments.

Mr. Lange indicated on his application that he hadn't been employed by Anchor before, but during the telephonic interview, Mr. Lange revealed that he had previously worked for Anchor for a brief time. Ms. Petty says that she wouldn't have arranged his in-person interview had she known Mr. Lange had made a material misrepresentation on his application, because the misrepresentation alone would have disqualified Mr. Lange's application. Mr. Lange can't recall discussing his previous employment during the telephonic interview, but he doesn't contest that he misrepresented his prior employment at Anchor on his application.

Anchor didn't extend a job offer to Mr. Lange, so Mr. Lange brought this lawsuit for discriminatory refusal to hire in violation of Title VII of the Civil Rights Act of 1964 and the Indiana Civil Rights Act, claiming that Anchor didn't hire him because he's African American. Anchor moves for summary judgment on both claims.

## II.    STANDARD OF REVIEW

"Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011); FED. R. CIV. P. 56(a). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . .").

The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. To defeat a summary judgment motion, "the

nonmovant must present definite, competent evidence in rebuttal," <u>Parent v.</u> <u>Home Depot U.S.A., Inc.</u>, 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial," <u>Hemsworth v. Quotesmith.com, Inc.</u>, 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A fact is material if affects the outcome of the case. <u>Monroe v. Ind. Dep't of</u> <u>Transp.</u>, 871 F.3d 495, 503 (7th Cir. 2017). "A factual dispute is genuine only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Alston v. City of Madison</u>, 853 F.3d 901, 910–911 (7th Cir. 2017) (quoting <u>Carroll v. Lynch</u>, 698 F.3d 561, 564 (7th Cir. 2012)).

## III.   Analysis

Indiana courts construe race discrimination claims under the Indiana Civil Rights Act consistent with Title VII. <u>Indiana C.R. Comm'n v. Marion Cnty.</u> <u>Sheriff's Dep't</u>, 644 N.E.2d 913, 915 (Ind. Ct. App. 1994). Both of Mr. Lange's claims can therefore be analyzed under Title VII's framework.

"[T]he singular question that matters in a discrimination case is: 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the . . . adverse employment action.'" <u>Johnson v. Advocate Health & Hosps. Corp.</u>, 892 F.3d 887, 894 (7th Cir. 2018) (quoting <u>Ortiz v. Werner Enters., Inc.</u>, 834 F.3d 760, 765 (7th Cir. 2016)). "To present this evidence, a plaintiff may utilize the <u>McDonnell</u> <u>Douglas</u> burden-shifting framework." <u>McDaniel v. Progress Rail Locomotive, Inc.</u>,

940 F.3d 360, 368 (7th Cir. 2019) (citations omitted); *see* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under this approach, the plaintiff must show that "(i) he is a member of a protected class; (ii) he applied and was qualified for a job for which the employer was seeking applicants; (iii) despite his qualifications he was rejected; and (iv) the defendants granted the job to someone outside the protected class who had similar or lesser qualifications." <u>Cooper v. Murphysboro Bd. of Educ., Cmty. Unit Sch. Dist. No. 186, Jackson Cnty., Ill.</u>, 6 F. App'x 438, 440 (7th Cir. 2001). "If the plaintiff meets each element of [his] prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." <u>McDaniel v. Progress Rail Locomotive, Inc.</u>, 940 F.3d at 360 (quoting <u>Skiba v. Ill. Cent. R.R. Co.</u>, 884 F.3d 708, 719-720 (7th Cir. 2018)).

The <u>McDonnell Douglas</u> framework isn't the only method a plaintiff may use to prove his claim; it "is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's" race. <u>Id</u>. (quoting <u>Johnson v. Advocate Health & Hosps. Corp.</u>, 892 F.3d at 894); <u>Volling v. Kurtz Paramedic Servs., Inc.</u>, 840 F.3d 378, 383 (7th Cir. 2016) (observing that a "prima facie case in Title VII litigation . . . refers to a common, but not exclusive, method of establishing a triable issue of intentional discrimination"). "However the plaintiff chooses to proceed, at the summary

6

judgment stage the court must consider all evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse employment action because of [a proscribed factor]." McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d at 368 (quoting Skiba v. Ill. Cent. R.R. Co., 884 F.3d at 720). Courts "therefore also assess the evidence 'as a whole, rather than asking whether any particular piece of evidence proves the case by itself.'" Id. (quoting Ortiz v. Werner Enters., Inc., 834 F.3d at 765).

Both parties primarily reference the McDonnel Douglas framework, so the court starts with whether Mr. Lange has established a prima facie case under that construct. The court then looks to all the evidence cumulatively presented by Mr. Lange to determine whether a reasonable factfinder could conclude that Mr. Lange wasn't hired because of his race. See David v. Bd. of Trs. of Cmty. College Dist. No. 508, 846 F.3d 216, 224 (7th Cir. 2017).

The parties agree that Mr. Lange satisfies the first and third elements of the McDonnel Douglas framework because he's African American and wasn't hired. Anchor contends Mr. Lange can't establish the second and fourth elements—that Mr. Lange was qualified for the Selector Packer position and that Anchor hired people who weren't members of the protected class and had similar or lesser qualifications. Ultimately, Anchor asserts that it didn't hire Mr. Lange because he was less qualified than the three people who were hired, he failed to disclose his prior employment at Anchor on his application, and he said during his phone interview that he would deal narcotics again. Mr. Lange argues that

7

he was just as qualified, if not more qualified, than the individuals who were hired and that Anchor's other explanations for not hiring him were pretextual.

"The 'similarly situated' prong establishes whether all things are in fact equal." Filar v. Bd. of Educ. of City of Chi., 526 F.3d 1054, 1061 (7th Cir. 2008) (citing Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007)). "Although similarly situated employees 'need not be identical in every conceivable way,' they 'must be directly comparable to the plaintiff in all material respects.'" Coleman v. Donahoe, 667 F.3d 835, 846 (7th Cir. 2012) (quoting Patterson v. Ind. Newspapers, Inc., 589 F.3d 357, 365–366 (7th Cir. 2009)).

The purpose of the "similarly situated" prong "is to eliminate other possible explanatory variables, 'such as . . . decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." Id. (quoting Humphries v. CBOCS W., Inc., 474 F.3d at 405). "In the usual case a plaintiff must at least show that the comparators . . . dealt with the same supervisor . . . ." Id. (quoting Patterson v. Ind. Newspapers, Inc., 589 F.3d at 365). "But 'this is not a hard and fast test, and there is no magic to these considerations. In the employment discrimination context, the requirement to find a similarly situated comparator is really just the same requirement that any case demands—the requirement to submit relevant evidence.'" McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d at 369 (citing Johnson v. Advocate Health & Hosps. Corp, 892 F.3d at 895). In doing this analysis, the court "does not sit as a superpersonnel department that reexamines an entity's business decisions." Bader v. United

Airlines, Inc., No. 14 C 2589, 2018 WL 2560960, at *11 (N.D. Ill. June 4, 2018) (quoting Baron v. City of Highland Park, 195 F.3d 33, 341 (7th Cir. 1999)).

"Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." Id. (citing Johnson v. Advocate Health & Hosps. Corp, 892 F.3d at 895). "Ultimately, [the] plaintiff bears the burden of showing the individuals . . . are similarly situated." Skiba v. Ill. Cent. R.R. Co., 884 F.3d at 723-724.

Mr. Lange says his qualifications were comparable, if not superior, to the three hirees' in terms of education, training, and past experience, and Anchor doesn't seem to dispute that he was among the top four applicants after his in-person interview. But there isn't any evidence in the record showing that any of the hirees made a material misrepresentation on their application or had a felony conviction, both of which weakened Mr. Lange's comparative qualifications. Mr. Lange didn't disclose his previous employment at Anchor on his application; Ms. Petty testified that a material misrepresentation on an application alone would disqualify an individual from employment consideration.

In response to Ms. Petty's declaration and testimony about him saying he would sell narcotics again, Mr. Lange testified that he couldn't recall whether he made the comment. He later said in a declaration that he didn't make those comments, but a litigant can't contradict prior testimony in a declaration to create a genuine issue of material fact to survive summary judgment. E.g.,

Servicios Especiales al Comercio Exterior v. Johnson Controls, Inc., No. 08-cv-1117, 2011 WL 1498591, at *1 (E.D. Wis. Apr. 19, 2011) (citing Bank of Ill. v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1168 (7th Cir. 1996)). Based on these facts, no reasonable juror could find that any of the hirees had similar or lesser qualifications than Mr. Lange for the Selector Packer position.

Mr. Lange also argues that Anchor has hired several white employees who had felony convictions or made material misrepresentations, so Anchor's alleged reasons for not hiring Mr. Lange are pretextual. First, the court doesn't reach whether an employer's reason for not hiring an applicant is pretextual until the plaintiff has established a prima facie case of discrimination, McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d at 360, and Mr. Lange hasn't done so. Second, Mr. Lange doesn't point to any evidence that Ms. Petty was the decisionmaker in hiring those individuals. Coleman v. Donahoe, 667 F.3d at 846.

Mr. Lange also asserts that Anchor didn't hire any African Americans with felonies until after he filed his EEOC charge, and he asserts that Anchor hiring Cody Grady—a Black felon—was "mere tokenism" to hide Anchor's discriminatory practices. Mr. Lange's only support for this statement is that when Anchor hired Mr. Grady, Mr. Lange had filed his EEOC charge and Anchor had submitted its EEOC position statement. But Ms. Petty, who was in charge of hiring Mr. Grady, testified that she wasn't aware of Mr. Lange's EEOC charge, she didn't think about Mr. Lange when deciding to hire Mr. Grady, and she didn't remember consulting with any other Anchor personnel or lawyers about the

EEOC statement. [Doc. No. 74-1 at 229, 265]. Mr. Lange hasn't provided any evidence to controvert Ms. Petty's recollection, so it doesn't follow that she only hired Mr. Grady as a front to avoid Mr. Lange's discrimination charge. Mr. Lange hasn't established that there is a genuine issue of material fact relating to the fourth element of the <u>McDonnell Douglas</u> framework.

Anchor also contends that Mr. Lange doesn't meet the second element of the <u>McDonnell Douglas</u> framework—that he was qualified for the Selector Packer job. Anchor says that Mr. Lange would have been disqualified from the applicant pool because he didn't disclose his prior employment at Anchor on his job application. Mr. Lange tries to dispute this account by saying he disclosed his previous work for Anchor during the phone interview and the past employment was brief and long ago. [Doc. No. 71 at 12]. But neither justification negates that he would have been disqualified for making the misrepresentation. *See* <u>Cooper v. Murphysboro Bd. of Educ., Cmty. Unit Sch. Dist. No. 186, Jackson Cnty., Ill.</u>, 6 F. App'x 438, 441 (7th Cir. 2001) ("In the absence of proof that he could or did meet the . . . [application] requirements, he cannot show that he was qualified for the . . . position . . . ."). The only evidentiary support he offers on this issue is that Anchor had hired someone in the past who had lied on his application about his criminal history. As was the case with the fourth element, Mr. Lange hasn't presented any evidence that Ms. Petty was the decisionmaker for that hiring decision, and he hasn't contested that the comparator at issue was terminated shortly after Anchor conducted a criminal history report. Mr. Lange hasn't raised a genuine issue of material fact about whether he would've been

qualified for the Selector Packer position despite not disclosing his past employment on his application.

Stepping back from the McDonnell Douglas framework and evaluating the evidence holistically, Mr. Lange hasn't shown that there is a genuine issue of material fact that a reasonable juror could find that he wasn't hired because he is African American.

Mr. Lange primarily takes issue with the development over time in Anchor's reasons for not hiring him. In its EEOC position statement, Anchor says it didn't hire him because he was less qualified than the three people who were hired, and it discussed his criminal conviction for dealing narcotics, his post-secondary education, and his misrepresentation on his application about whether he had been employed by Anchor before. During this litigation, Anchor has continued to rely on those explanations, and it has added that Mr. Lange told Ms. Petty in his interview that he wouldn't get caught by a confidential informant when dealing narcotics again. Mr. Lange says that because Anchor raised that comment during this litigation, rather than raising it in the EEOC proceedings, and because Ms. Petty's notes from the telephone interview don't reference the statement, Anchor's proffered reasons for not hiring Mr. Lange are pretextual.

The circuit court has addressed this argument and said that, without more, a change in the stated reason for an adverse employment action from what a party submitted to the EEOC isn't enough to establish race discrimination:

> To go from this factual discrepancy to an inference of racial bias, a jury would have to conclude first that the discrepancy was the result of a deliberate decision to mislead the EEOC and second that the motive of the deliberate decision to mislead was to conceal unlawful race discrimination. Without further circumstantial evidence of unlawful discrimination, a reasonable jury could not take that step. (The issue here is familiar as the pretext element of the McDonnell Douglas framework for circumstantial evidence. Even under that framework, such evidence of pretext is not enough by itself to prove discrimination; it becomes a factor only after the plaintiff has shown other circumstances corroborating unlawful intent, including evidence that a similarly situated employee outside the plaintiff's protected class was treated better. That additional evidence is missing here.)

Lane v. Riverview Hosp., 835 F.3d 691, 697 (7th Cir. 2016) (internal citations omitted). Anchor's expansion of reasons for not hiring Mr. Lange doesn't establish pretext or racial discrimination.

Mr. Lange also disputes Ms. Petty's statement that she was unaware of Mr. Lange's race during the application process by saying that she knew Mr. Lange's brother, Brad Lange, and she believed he was mixed race. But even if Ms. Petty knew Mr. Lange was African American, that doesn't prove that she didn't hire him because he's African American or otherwise create a genuine issue of material fact.

Overall, the holistic look at the record in this case doesn't reveal any direct or circumstantial evidence that Mr. Lange wasn't hired because of his race. There are no genuine issues of material fact in this case, and Anchor is entitled to judgment as a matter of law.

13

IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Anchor's motion for summary judgment, [Doc. No. 53], and DIRECTS the clerk to enter judgment for Anchor.

SO ORDERED.

ENTERED: September 30, 2022

 /s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution to all counsel of record via CM/ECF.