# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

August 2, 2023

To: Roger A. G. Sharpe
UNITED STATES DISTRICT COURT
Southern District of Indiana
210 Federal Building
New Albany, IN 47150-0000

| | |
|---|---|
| No. 22-2902 | CORY B. LANGE,<br>        Plaintiff - Appellant<br><br>v.<br><br>ANCHOR GLASS CONTAINER CORPORATION,<br>        Defendant - Appellee |
| **Originating Case Information:** ||
| District Court No: 4:20-cv-00160-RLM-DML<br>Southern District of Indiana, New Albany Division<br>District Judge Robert L. Miller, Jr. ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                                   No record to be returned

form name: **c7_Mandate**   (form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

July 11, 2023

Before

MICHAEL B. BRENNAN, *Circuit Judge*
AMY J. ST. EVE, *Circuit Judge*
JOHN Z. LEE, *Circuit Judge*

| No. 22-2902 | CORY B. LANGE,<br>   Plaintiff - Appellant<br><br>v.<br><br>ANCHOR GLASS CONTAINER CORPORATION,<br>   Defendant - Appellee |
|---|---|
| **Originating Case Information:** | |
| District Court No: 4:20-cv-00160-RLM-DML<br>Southern District of Indiana, New Albany Division<br>District Judge Robert L. Miller, Jr. | |

The district court's grant of summary judgment is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this order. The above is in accordance with the decision of this court entered on this date. Costs imposed on Anchor Glass Container Corporation.

*[signature: Christopher Conway]*

Clerk of Court

form name: **c7_FinalJudgment**   (form ID: **132**)

CERTIFIED COPY
A True Copy
Teste:
*[signature]*
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Argued June 6, 2023
Decided July 11, 2023

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

JOHN Z. LEE, *Circuit Judge*

No. 22-2902

| | |
|---|---|
| CORY B. LANGE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, New Albany Division. |
| v. | No. 4:20-cv-160-RLM-DML |
| ANCHOR GLASS CONTAINER CORPORATION, *Defendant-Appellee*. | Robert L. Miller, Jr., *Judge*. |

### O R D E R

Cory Lange, an African-American man, sued Anchor Glass Container Corporation ("Anchor Glass") after it declined to hire him. He alleged that the decision was racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). The district court entered summary judgment for Anchor Glass. Because a reasonable jury could find that Anchor Glass's shifting and inconsistent statements were pretext for a discriminatory hiring decision, we vacate the judgment and remand for further proceedings.

Case 4:20-cv-00160-TWP-KMB   Document 99   Filed 08/02/23   Page 4 of 7 PageID #: 1597
Case: 22-2902   Document: 00714236929   Filed: 08/02/2023   Pages: 5

No. 22-2902                                                                                                    Page 2

We recount the facts in the light most favorable to Lange, drawing reasonable inferences in his favor. *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022). In 2018, Lange applied for an entry-level "selector packer" position with Anchor Glass, a manufacturer of glass packaging products. In this hiring cycle, Anchor Glass interviewed ten people, and a panel of three managers rated Lange among the top four candidates. Afterward, Human Resources Specialist Katie Petty, the sole hiring authority, conducted a telephone interview with Lange because she did not attend his in-person interview. During the call, Lange voluntarily disclosed a felony drug-dealing conviction. (At that time, the written application did not ask candidates to disclose criminal convictions). Eventually, Petty informed Lange that he was not hired. The three candidates she did hire were white men.

Lange filed a charge with the Equal Employment Opportunity Commission, alleging race-based discrimination because the company employed at least one white man with a prior criminal conviction. In its position statement responding to the charge, Anchor Glass stated that Lange was less qualified than the hired workers, "due in part to [his] criminal conviction for dealing narcotics." Anchor Glass also noted that Petty did not attend any of the interviews during the hiring cycle because she had been out of the office. Finally, Anchor Glass stated that, while investigating the EEOC charge, it discovered that Lange had made a material misrepresentation on his application: failing to disclose his previous employment with the company.

The EEOC made a probable cause finding in Lange's favor and issued a right-to-sue notice. Lange sued Anchor Glass for race-based discrimination under the Indiana Civil Rights Act, Ind. Code §§ 22-9-1-1 to 18, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

During discovery, several apparent factual inconsistencies arose. In his deposition, Lange testified about his phone interview with Petty. He stated that he had disclosed his drug-dealing conviction and mentioned that he had worked at Anchor Glass for about a month 14 years earlier—through a temp agency, he believed. According to Lange, Petty suggested that his conviction would be an issue, and he replied that he knew of other people with felony convictions working for Anchor Glass.

Anchor Glass moved for summary judgment. In a declaration, Petty, for the first time, stated that she had already decided to hire the other three candidates before Lange's in-person interview with the hiring panel. In an apparent contradiction of the company's EEOC position statement, she also swore that she was present for a "majority" of the interviews, though she admittedly did not complete applicant

No. 22-2902 Page 3

evaluation forms or otherwise take interview notes. Petty also asserted that, after Lange disclosed his drug conviction on the phone with her, he made inappropriate comments that he would "do it all again" but ensure that he was not dealing with an undercover officer. Petty attested that she decided not to hire Lange based on this statement and her later realization that Lange did not note on his application that he had previously worked for Anchor Glass.

Petty was later deposed. Although she was the only human resources professional in the facility, Petty testified that she was unaware of Lange's EEOC charge and had not reviewed the company's EEOC position statement. Petty testified that as the sole hiring authority, she went with her "gut" not to hire Lange based on her belief that he could not advance within the company. Petty also testified, however, that she usually came to an agreement with the interviewers about hiring decisions and had consulted with the plant manager about Lange's criminal history. She reiterated that Lange told her on the phone that he would deal drugs again, just not to an undercover officer. Contrary to her declaration, she testified that two of the three selected applicants were interviewed the day after Lange's panel interview.

Lange responded to Anchor Glass's motion, highlighting how Anchor Glass's reasons for not hiring him had shifted repeatedly. In his own declaration, Lange denied making the alleged comments to Petty suggesting he would commit the crime again if he would not get caught.

The district court granted Anchor Glass's motion for summary judgment. The court explained that none of the other hired employees who interviewed at the same time as Lange had disclosed a criminal conviction or made a material misrepresentation on their applications. Applying the *McDonnell Douglas* burden-shifting method, the court concluded that Anchor Glass's "expansion of reasons" for not hiring Lange did not support an inference of racial discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

On appeal, Lange primarily contends that Anchor Glass's changing and inconsistent reasons for not hiring him raise genuine issues of material fact about whether Anchor Glass declined to hire him because of his race. Indiana courts construe the state's antidiscrimination statute consistent with Title VII. *Ind. C.R. Comm'n v. Marion Cnty. Sheriff's Dep't*, 644 N.E.2d 913, 915 (Ind. Ct. App. 1994). Thus, we do not distinguish between Lange's two claims here.

No. 22-2902 Page 4

In employment-discrimination cases, the overarching question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race" caused the adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). And "an employer's dishonest explanation of a decision can support an inference that its real reason was unlawful." *Runkel*, 51 F.4th at 745. The question is not whether the employer's plausible, nondiscriminatory reasons might have been sufficient to justify the decision, but whether they were truly the reasons for that decision. *Id.* (citing *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 932 (7th Cir. 2020)).

The numerous inconsistencies in the evidence supporting Anchor Glass's proffered nondiscriminatory reasons for not hiring Lange would permit a reasonable jury to infer that they are pretext for racial discrimination. A jury may reasonably infer pretext from "flagrant" inconsistencies in an employer's proffered nondiscriminatory reasons for an employment action. *Baker v. Macon Res., Inc.*, 750 F.3d 674, 677 (7th Cir. 2014). Anchor Glass has provided multiple reasons for not hiring Lange, each introduced at a different time. First, in its EEOC position statement, Anchor Glass asserted that its nondiscriminatory reason for not hiring Lange was his criminal record. Second, after Lange filed suit, Petty declared and testified at her deposition that she primarily based her decision on Lange's statements about his willingness to repeat his crimes. Finally, in its motion for summary judgment, Anchor Glass cited as its reason Lange omitting his previous employment with the company. Each of these justifications is contradicted by Anchor Glass's own evidence.

In her declaration submitted shortly after Lange's deposition, for example, Petty swore that she did not learn about *either* his criminal conviction or his previous work at Anchor Glass until after she already decided to hire the three white candidates. Thus, at a minimum, there appear to be factual disputes underlying Anchor Glass's current argument that Petty's realization about the misrepresentation prevented Lange's hire.

In its appellate brief, Anchor Glass now maintains that Lange's criminal history was not a consideration in the employment decision. Instead, the company contends that Lange was not hired because of his "inappropriate" comments about dealing drugs and his failure to disclose his previous employment at the company. But there is evidence that neither of these proffered reasons is genuine, which allows an inference of intentional discrimination. *Runkel*, 51 F. 4th at 745. Anchor Glass provided both these reasons only after it retreated from its initial position that Lange's criminal background made him a less qualified candidate.

Case 4:20-cv-00160-TWP-KMB Document 99 Filed 08/02/23 Page 7 of 7 PageID #: 1600
Case: 22-2902 Document: 00714236929 Filed: 08/02/2023 Pages: 5

No. 22-2902 Page 5

The "inappropriate remark" reasoning is a non-starter at the summary judgment stage. There is competing testimony about whether Lange made any such remark. It therefore cannot be accepted as a legitimate, nondiscriminatory reason. However, the fact that Anchor Glass proffered this reason at various times does figure into whether the reasons it has now settled on are genuine or pretextual.

Finally, Lange's misrepresentation on his application about his former employment at Anchor Glass has also evolved in its significance over time. It has gone from being a late explanation to, now, the only purported nondiscriminatory reason that could earn Anchor Glass summary judgment based on this record. We may consider an employer's "after-the-fact rationalization" of a decision as support for an inference that its real reason was unlawful. *See Runkel*, 51 F.4th at 745. Here, Anchor Glass reported to the EEOC that, before it investigated the charge, it was unaware of Lange's prior experience at the company. And Petty attested that she did not learn about the misrepresentation until after she interviewed Lange— but she swears that, by then, she had already made her hiring decision. Thus, a jury would not have to accept that Lange's omission is the company's sincere reason for rejecting Lange. *See Joll*, 953 F.3d at 933. (And even regarding this reason, Lange has explained that he did not believe he worked "for" Anchor Glass previously.)

Because the evidence must be considered as a whole, *see id.*, Lange identifies enough inconsistencies in Anchor Glass's explanations about its reasons for not hiring him to survive summary judgment. Petty's reasons for not hiring Lange, or whether she ever considered hiring him, are material facts that remain in dispute, and the differences between her testimony and the company's EEOC position statement have not been resolved.

Therefore, we VACATE the district court's grant of summary judgment, and we REMAND for further proceedings consistent with this order.

CERTIFIED COPY
A True Copy
Teste:
[signature] Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit