UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| **CORY B. LANGE,** : | |
| : | CASE NO. 4:20-cv-160-TWP-KMB |
| **Plaintiff,** : | |
| : | |
| v. : | PLAINTIFF'S REPLY IN SUPPORT OF |
| : | HIS MOTION IN LIMINE CONCERNING |
| **ANCHOR GLASS CONTAINER** : | CODY GRADY, AND IN OPPOSITION |
| **CORPORATION,** : | TO DEFENDANT'S CROSS MOTION IN |
| : | LIMINE |
| : | |
| **Defendant.** : | |
| : | |

## I.     FACTUAL BACKGROUND

On July 5, 2019, Defendant Anchor Glass was notified that Plaintiff Cory Lange filed a Charge of Discrimination (the "Charge") against it with the Equal Employment Opportunity Commission. (Pl. Trial Ex. 122.) After receiving notification, Anchor Glass took two actions: (1) it hired Cody Grady, an African American with a criminal record; and (2) it filed its Position Statement with the EEOC. (Def. Trial Ex. 226-231; Pl. Trial Ex. 119, pp. 1-6.) Both actions were taken in September of 2018, and were a direct response to Cory's Charge of discrimination.

In its Position Statement, Defendant stated that Cory's rejection was *solely because of his criminal record.* (Pl. Trial Ex. 119, pp. 1-6). It cited this explanation no less than three times. *Id.*

Defendant Anchor Glass did not have a policy of disqualifying all applicants with criminal records, and Katie Petty – a member of the Human Resources Department from 2014 until 2019 – was well aware of that when she chose to reject his application in 2018.

1

From 2014 to the time of Plaintiff's application, Defendant had hired no less than four felons: (1) Dustin Allen; (2) Terron Gregg; (3) Eric Gosmeyer; and (4) Robert Wetzler. (Jt. Trial Exs. 305, 308-312; Pl. Trial Ex. 113; Jt. Trial Ex 305.) Each was Caucasian.

Ms. Petty was in the Human Resource Department for EACH of these hires, and describes herself as being responsible in that time for "recruiting" and "new hire processing". (Pl. Trial Ex. 121, pg. 1.) Throughout her tenure, she was aware that there was no policy of disqualifying applicants with criminal pasts. She also was aware of Mr. Gregg's criminal background, and had herself requested the background check on Mr. Gosmeyer that showed his felony criminal record. (Jt. Ex. 305; Jt. Ex. 308; Pl. Trial Ex. 113.)

Despite having extensive criminal histories, the above-mentioned white applicants were all accepted for employment. Plaintiff is African American, and his application was rejected.

## II.   LAW AND ARGUMENT

### A. Defendant's lengthy history of hiring white Selector Packers with significant criminal backgrounds is relevant to show that Defendant did not have a policy of disqualifying applicants with a criminal history when Cory was rejected for his criminal history.

If this issue sounds familiar to the Court, it is because Defendant tried once before to prevent the disclosure of evidence that it had hired numerous white felons in the time preceding its rejection of Plaintiff. Plaintiff had to seek the intervention of the Court just to get access to this evidence. Defendant made the same faulty claim then – i.e. that the evidence was irrelevant because Ms. Petty was not the "decisionmaker" in previous hires. It was only after the Court ORDERED Defendant to produce documentation of prior felony hires (Doc. 57) that it disclosed the fact it had hired numerous white felons between 2014 and the Spring of 2018 (when Plaintiff was rejected due to his conviction). (Pl. Trial Ex. 124) In that same period Defendant had hired zero African Americans with felony records.

Now Defendant is back making the same erroneous arguments that the Court rejected previously.

Defendant is incorrect in asserting that evidence pertaining to Mr. Gregg, Mr. Allen, Mr. Wetlzer, and Mr. Gosmeyer's employment and criminal histories are irrelevant because Ms. Petty allegedly was not the "decisionmaker" for their hiring. This Circuit has found that an employer's selective enforcement of company policy can establish that the employer's stated reasons for its action is a pretext for discrimination. *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 926 (employer's deviation from its standard hiring procedures is evidence of discrimination).

Furthermore, Defendant's claim that its hiring of white felons can't be considered because they are not "similarly situated" to Plaintiff is well wide of the mark. The "similarity" inquiry is not rigid, it is "a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors… to allow for a meaningful comparison." *Henry v. Jones*, 507 F. 3d 558, 564 (7th Cir. 2007).

The prior criminal history, job applications, and employment histories of the above-mentioned white employees obviously casts doubt on the credibility of Defendant's explanation for its rejection of Cory's application. It shows that not only did company policy *not prohibit* the hiring of people with criminal records, but that the recent practice of the company had been to actually *hire* such individuals with at least semi-regularity. Ms. Petty was aware of all of this when she chose to reject Plaintiff's application due to his criminal conviction. She had been in the HR department through it all – one of only two such people at the Lawrenceburg plant – and had processed all these people through the system.

Moreover, there were no changes in Company policy regarding the hiring of applicants with criminal records between the time the four white felons were hired and the time Cory was

3

rejected. (Petty Depo., p. 44.) Thus, Ms. Petty was operating under the SAME company policies when she rejected Cory that the company had applied when it ACCPETED Gregg, Allen, Gosmeyer, and Wetzler.

When each of the white employees was hired, Ms. Petty was herself employed in the Human Resources Department, where she said she was responsible for "recruiting" and "new hire processing". (Pl. Trial Ex. 121.). Ms. Petty was also specifically aware of Mr. Gregg's criminal background (Gregg Depo., pp. 40-42), and had requested the background check on Mr. Gosmeyer that showed a serious criminal record. (Pl. Trial Ex. 113; Jt. 307.).

Thus, at the time of Ms. Petty's rejection of Plaintiff, the evidence shows she was likely well aware the company had been hiring PLENTY of white applicants with serious criminal backgrounds. This evidence is thoroughly relevant, as it casts serious doubt on the credibility of Defendant's stated explanation to EEOC that Cory was not hired because of his conviction.

**B. Evidence of Defendant's after-the-fact hiring of an African American with a criminal record is irrelevant to whether Defendant held a discriminatory motive or intent at the time it denied Cory Lange employment.**

Cody Grady's hiring in September of 2018 is irrelevant to the current lawsuit, as evidence of Defendant's <u>subsequent</u> hiring has no tendency to make its discriminatory motive or intent (at the time Cory was rejected) more or less probable. Therefore, it is inadmissible under Federal Rule of Evidence 402, as the case law cited in Plaintiff's Motion in Limine shows.

Defendant acknowledges that Mr. Grady's "successful application" was months after Cory's rejection, but claims evidence of this should be admitted because the two decisions were "based on the Company's same policy and procedure". (Doc. 183, p. 10.)

In April of 2018, Cory was rejected because of his criminal conviction. It was only <u>after</u> Defendant was notified of Cory's Charge of Discrimination that Mr. Grady was hired. (Pl. Trial

4

Ex. 121.) (Def. Trial Ex. 226-231). This "subsequent remedial measure' is irrelevant. It was not information Defendant had at the time it rejected Cory.

Defendant claims it is entitled to admit evidence of Mr. Grady's subsequent hiring as Cory somehow "opened the door" to the irrelevant evidence when he emailed *the EEOC* about Mr. Grady's successful application. (Dkt 183, p. 10). This is incorrect.

The "open the door" doctrine gives a court discretion to permit an opponent to introduce inadmissible evidence in rebuttal to a proponent's introduction of inadmissible evidence *at trial*. *United States v. Martinez*, 988 F.2d 685, 702

> Where the proponent's inadmissible evidence advances his case or undercuts that of his adversary, or **otherwise introduces prejudice to the trial**, then in fairness the adversary should be allowed to try to neutralize the effect of this evidence or cure any resulting prejudice by introducing otherwise-inadmissible rebuttal evidence.

*Id.* (citing 1 David W. Louisell & Christopher B. Mueller, Federal Evidence § 11, at 49 (1977)).

Plaintiff's email about Mr. Grady to the EEOC – offered by him then only in response to Defendant's citing to Grady's hiring in its Position Statement – cannot be said to have "opened the door", as it has not been admitted in court, and has not introduced prejudice into the trial of this matter.

Even if Cory was considered to have offered this evidence, Defendant would not be given carte blanche to introduce otherwise irrelevant evidence into the trial. (*United States v. Martinez*, 988 F.2d 685, 702 (opponent is not given unbridled license to introduce otherwise inadmissible evidence merely because it is in the same category of excludable evidence as evidence previously offered.))

Finally, Defendant invokes the "spirit of fairness" to try to convince the Court to admit this irrelevant evidence that was not even in existence when it was deciding not to hire Plaintiff.

Defendant states that if the evidence of Mr. Gregg, Mr. Allen, Mr. Wetzler, and Mr. Gosmeyer's employment and criminal histories are admitted, then so must Mr. Grady's.

Defendant ignores the stark difference between evidence of Mr. Grady's hiring – completed *after* Defendant was notified of Cory's Charge – with evidence of Defendant's lengthy history of hiring white felons **leading up to** Plaintiff's rejection. (Jt. Trial Exs. 305, 308-312; Pl. Trial Ex. 113; Jt. Trial Ex 305.)

Exposing the lengthy history of Defendant's hiring practices before Plaintiff applied – hiring several white felons, but no comparable black applicants, is not "allow[ing] Plaintiff to manufacture a distorted image of the Company's policy and practice," (Doc. 183, p. 11). It shows that Defendant did not have a policy of disqualifying criminal applicants, and goes directly to the credibility of Defendant's original justification for not hiring Plaintiff. It may be laudable that Defendant changed its ways after it was charged with discrimination, but it has no relevance to what Defendant was thinking *at the time it made its decision on Plaintiff's application.*

### III. CONCLUSION

For these reasons, Plaintiff respectfully requests that Defendant's Motion to exclude evidence regarding the applications, hiring, and criminal histories of Mr. Gregg, Mr. Allen, Mr. Wetzler, Mr. Gosmeyer be denied. Plaintiff also asks that the Court grant its Motion in Limine Concerning the application, interview, or hiring of Cody Grady, or of any other hirings made *after* Defendant acted on Plaintiff's application.

Respectfully submitted,

*/s/ Stephen E. Imm*
Stephen E Imm (0040068)
Diana L. Emerson (OH# 0103214)
Finney Law Firm, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245

              (513) 943-5678
              (513) 943-6669-fax
              stephen@finneylawfirm.com
              diana@finneylawfirm.com

              Grant E. Swartzentruber (29297-14)
              SWARTZENTRUBER BROWN
              412 East Flora Street, Suite 1
              Washington, IN 47501
              (812) 254-7268
              (812) 716-2789 (fax)
              grant@swartzentruberlaw.com
              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

 The undersigned certifies that a copy of the foregoing has been served upon all counsel of record via the Court's ECF system on this 26th day of August, 2024.

              */s/ Stephen E. Imm*
              Stephen E Imm (0040068)