# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

| | | |
|---|---|---|
| CORY B. LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00160-TWP-KMB |
| | ) | |
| ANCHOR GLASS CONTAINER | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON POST-TRIAL MOTIONS

This matter is before the Court on the Plaintiff's Motion for Leave to File Amended Complaint (Filing No. 274), as well as the Defendant's Renewed Motion for Judgment as a Matter of Law (Filing No. 282) and Rule 59 Motion or for Remittitur (Filing No. 284). In 2020, Plaintiff Cory Lange ("Lange") sued Defendant Anchor Glass Container Corporation ("Defendant," "Anchor Glass") for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. A jury returned a verdict in favor of Lange for both compensatory and punitive damages (Filing No. 207). The Court then issued a Final Judgment (Filing No. 270) which was followed by the pending motions. For the reasons explained below, the Plaintiff's motion for leave to amend the complaint is **denied**. Defendant's Renewed Motion for Judgment as a Matter of Law is also **denied**, and its Rule 59 Motion or for Remittitur is **granted in part** and **denied in part**.

## I.      BACKGROUND

In April 2018, Lange, an African American man, applied for an entry level "selector packer" position at Anchor Glass. A panel of three production managers interviewed ten candidates for the position and ranked Lange among the top three. Human Resources Specialist, Katie Petty

("Petty"), was out of the office during the first round of in-person interviews but made the final hiring decision after conducting telephone interviews of the highest-rated candidates. During Lange's interview with Petty, he disclosed a prior felony conviction for drug dealing. Petty ultimately declined to extend Lange an offer and instead hired three white applicants for the position.

Lange filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") noting the company had previously hired a Caucasian employee with a criminal record. The EEOC issued a probable cause finding in favor of Lange, and Lange initiated this action under Title VII in July 2020 (Filing No. 1).

Anchor Glass's reasons for not hiring Lange changed over the course of the litigation. First, in its position statement before the EEOC, Anchor Glass stated the company declined to extend Lange an offer because he was less qualified than the individuals it did hire, in part because of his criminal conviction (Filing No. 189-1 at 1). The company's EEOC position statement also explained that Petty was not present for the in-person interviews and that she did not extend Lange an offer "[b]ased upon Mr. Lange's admission." *Id.* at 2–3. In contrast, Petty affirmed in a declaration that she was present for a "majority" of the interviews and her decision not to hire Lange had nothing to do with his disclosure of his conviction because she had already decided to hire three other candidates before her interview with Lange (Filing No. 54-1 at ¶¶ 6–7, 12). Petty also declared that Lange told her he would "do it all again," in reference to his criminal conviction, which she found inappropriate in a candidate for hire. *Id.* at ¶ 12.

Lange initiated this lawsuit against Anchor Glass in 2020. The original Complaint asserted a cause of action under Title VII and the Indiana Civil Rights Act, Ind. Code §§ 22-9-1-1 to 18 (Filing No. 1). Lange alleged that after applying for the position and disclosing a prior criminal

conviction, Anchor Glass refused to hire him despite his years of experience and its decision to hire a similarly situated white employee with a criminal record. *Id.* The parties conducted discovery and on June 3, 2021, Lange filed "Plaintiff's Statement of Claims," confirming that he intended to prove Anchor Glass's "refusal to hire Plaintiff was in violation of Title VII of the Civil Rights Act of 1964 and the Indiana Civil Rights Act, Ind. Code 22-9-1 et seq." (Filing No. 29).

At the summary judgment stage, Anchor Glass averred that a misrepresentation on Lange's application was the reason for its decision not to hire him, and summary judgment was granted in favor of Anchor Glass (Filing No. 86). The Seventh Circuit reversed. *Lange v. Anchor Glass Container Corp.*, No. 22-2902, 2023 WL 4449211, at *2–3 (7th Cir. July 11, 2023). The appellate court held that "a reasonable jury could find that Anchor Glass's shifting and inconsistent statements were pretext for a discriminatory hiring decision," and remanded the case for further proceedings. *Id.* at *1.

On remand, Lange voluntarily dismissed the state law claim, and the parties proceeded to jury trial on the Title VII race-discrimination claim alone. The jury viewed the evidence and heard testimony that: (1) Lange was a top candidate for the selector packer position; (2) Anchor Glass based its EEOC position statement on conversations with Petty; (3) Petty's stated reasons for not hiring Lange differed from the reasons in the position statement; (4) Lange denied having said he would commit the crime again; and (5) the company had previously hired white employees with criminal convictions, among other things.

Anchor Glass moved for judgment as a matter of law at the close of Lange's case and again at the close of Defendant's case, which the Court twice denied. By agreement of the parties, the Court instructed the jury that Lange's claim of race discrimination was brought under Title VII and that to succeed on that claim, "Mr. Lange must prove by a preponderance of the evidence that he

was not hired by [Anchor Glass] because of his race.  To determine that Mr. Lange was refused employment because of his race, you must find that [Anchor Glass] would have hired him had he not been African American, if all other facts remained the same." (Filing No. 205-2 at 3, 17).  The jury returned a verdict in favor of Lange, awarding him $90,000.00 in compensatory damages and $1,000,000.00 in punitive damages (Filing No. 207).

The case was then scheduled for a subsequent bench trial on the issues of front pay and back pay.  After a limited discovery period, however, Lange's counsel moved the Court to vacate the bench trial on lost wages and enter final judgment on the jury's verdict for compensatory and punitive damages; the reason being that "Plaintiff has decided for personal reasons not to pursue the recovery of back pay and front pay damages in this action." (Filing No. 267). Those claims were subsequently dismissed with prejudice (Filing No. 269).  The Court entered final judgement on February 11, 2025 (Filing No. 270).  On March 3, 2025, Lange filed the instant motion for leave to amend his complaint, for the first time seeking to assert a claim for race discrimination under 42 U.S.C. § 1981 (Filing No. 274).  Anchor Glass timely filed its Renewed Motion for Judgment as a Matter of Law and Rule 59 Motion or for Remittitur (Filing No. 282; Filing No. 284).  These motions are now ripe for the Court's review.

## II.      LEGAL STANDARDS

### A.      Motion for Judgment as a Matter of Law

Under Rule 50 of the Federal Rules of Civil Procedure, the Court may "enter judgment against a party who has been fully heard on an issue during a jury trial if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (citation modified). "In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and

examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Id.*

> Under Rule 50, both the district court and an appellate court must construe the facts strictly in favor of the party that prevailed at trial. Although the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence.

*Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) (citations omitted). "Although the court reviews the entire record, the court 'must disregard all evidence favorable to the moving party that the jury [was] not required to believe.'" *Passananti*, 689 F.3d at 659 (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000)). If a Rule 50(a) motion for judgment as a matter of law is made at the close of evidence and not granted, the movant may renew the motion no later than twenty-eight days after the entry of judgment. Fed. R. Civ. P. 50(b).

**B.**    **Motion for a New Trial or to Amend Judgment or for Remittitur**

Under Rule 59(a)(1), a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  A motion for a new trial may be granted if the verdict was against the manifest weight of the evidence.  *Mejia v. Cook Cnty.*, 650 F.3d 631, 633 (7th Cir. 2011).  In considering "whether the verdict was against the manifest weight of the evidence, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial."  *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (citation and quotation marks omitted); *see also Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 540 (1958) ("The trial judge in the federal system has powers denied the judges of many States to comment on the

weight of evidence and credibility of witnesses, and discretion to grant a new trial if the verdict appears to him to be against the weight of the evidence.").

A "new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Estate of Burford v. Acct. Prac. Sales, Inc.*, 851 F.3d 641, 646 (7th Cir. 2017) (citation modified). Said differently, the court will "uphold a jury verdict . . . as long as a reasonable basis exists in the record to support [the] verdict," *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010), and construes the evidence "in the light most favorable to the prevailing party." *Carter v. Moore*, 165 F.3d 1071, 1079 (7th Cir. 1998).

Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the Court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted).

Furthermore, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, No. 07-cv-1630, 2009 WL 799546, at *3 (S.D. Ind. Mar. 24, 2009).

When evaluating an award of compensatory damages and considering whether to grant remittitur, district courts in this Circuit ask whether: (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases. *See G.G. v. Grindle*, 665 F.3d 795, 798 (7th Cir. 2011) (*citing Pickett*, 610 F.3d at 446).

## C.   Motion to Amend Complaint

Federal Rule of Civil Procedure 15(b)(2) permits the amendment of a complaint after judgment upon the consent of the parties.  The rule specifically provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2).  To determine whether a party consented to the amendment, the Court asks, "whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1106 (7th Cir. 2013) (citation and quotation marks omitted). Consent is critical to Rule 15(b)(2)'s application, and the Court "will not imply a party's consent to try an unpleaded claim 'merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim.'" *Id.* (quoting *Ippolito v. WNS, Inc.*, 864 F.2d 440, 456 (7th Cir. 1988)).

### III.    **DISCUSSION**

In his motion for leave to amend his complaint, for the first time, Lange seeks to assert a claim for race discrimination under 42 U.S.C. § 1981.  According to Lange, the amendment is intended to conform to the evidence at trial establishing that Anchor Glass "unlawfully discriminated against him on the basis of his race when it refused to hire him in April 2018." (Filing No. 274 at 2).  Anchor Glass opposes the Motion arguing that it lacked notice of the § 1981 claim and did not consent to try such a claim before the jury.  The Court will first address Anchor Glass's Renewed Motion for Judgment as a Matter of Law and Rule 59 Motion or for Remittitur before turning to Lange's motion for leave to amend.

### A.    **Anchor Glass's Renewed Motion for Judgment as a Matter of Law**

Anchor Glass renews its Motion for Judgment as a Matter of Law on Lange's claim that the company discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act.  To succeed on a Title VII race-discrimination claim, Lange was required to prove that but for his race, he would have been hired for the selector packer position.  *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016).  To carry this burden, Lange needed to provide evidence from which a reasonable juror could conclude that his race caused the adverse employment action.  *See id.* at 765.

Anchor Glass's argument is two-fold.  First, Anchor Glass contends that Title VII does not impose liability based solely on the jury's disbelief of the employer's proffered reasons for the failure to hire.  It argues that under *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), Lange needed to do more than simply discredit Petty; and, Title VII also requires the plaintiff to satisfy the *prima facie* case established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (Filing No. 283 at 21–24).  Second, Anchor Glass contends Lange did not prove a *prima facie* case

of discrimination because he failed to show that any similarly situated employee was treated more favorably than he was. Anchor Glass argues the white employees with criminal records are not comparable because someone other than Petty made the decision to hire them, therefore, because Lange provided no other direct or circumstantial evidence of discrimination, the verdict was against the weight of the evidence. *Id.* at 24–29.

In response, Lange explains that *Hicks* and its progeny stand for the simple proposition that a jury may, but is not required to, infer discrimination based on its disbelief of the employer's explanation. Once a case reaches trial, he says, the *McDonnell Douglas* framework drops out and the "sole issue for consideration" is whether the plaintiff has presented sufficient evidence to permit a rational jury to conclude he was the victim of intentional discrimination (Filing No. 307 at 21–24). Second, he argues even if a *prima facie* case was required at trial, he presented sufficient evidence to establish that similarly situated employees were treated more favorably. When coupled with evidence of pretext, the evidence that Anchor Glass previously hired three white employees with criminal records permitted the jury to conclude that race was the real reason for the company's failure to hire Lange. *Id.* at 24–28.

As required under Rule 50, the Court construes the facts in favor of Lange as the party who prevailed at trial. *Schandelmeier-Bartels*, 634 F.3d at 376. The Court examines the evidence to determine whether it supports the jury's verdict, without reweighing the evidence or making credibility determinations. *Id.* The Court must then consider whether a reasonable jury would have a legally sufficient evidentiary basis to find for Lange on his Title VII claim.

With those standards in mind, the Court agrees with Lange. The Seventh Circuit has explained that the *McDonnell Douglas* burden-shifting framework falls away once a case reaches trial. *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 861 (7th Cir. 2007). Though

the *prima facie* case may provide useful evidence for a jury to consider, the "sole legal issue is whether the plaintiff presented sufficient evidence to permit a rational jury to determine that [he] was the victim of intentional discrimination." *Id.* (citing *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 925 (7th Cir. 2000)); *see also Hicks*, 509 U.S. at 511 (explaining that the "ultimate question" at trial is "discrimination *vel non*").   At this stage, moreover, a jury's rejection of an employer's reasons for the adverse employment action can support an inference of discrimination, and no additional proof of discrimination is required.  *See Murphy v. Caterpillar, Inc.*, 140 F.4th 900, 911 (7th Cir. 2025) (quoting *Hicks*, 509 U.S. at 511).

Here, the jury heard evidence that Anchor Glass's reasons for not hiring Lange were inconsistent.  From that evidence, the jury was permitted to find that the reasons the company provided were not the "real reason for its decision." *Donley v. Stryker Sales Corp.*, 906 F.3d 635, 638 (7th Cir. 2018); *see also Lange*, 2023 WL 4449211 at *2 (citing *Baker v. Macon Res., Inc.*, 750 F.3d 674, 677 (7th Cir. 2014)).  Indeed, once a jury determines the employer's justification is not worthy of credence, discrimination may be the most likely explanation, "especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147.  Buttressed by evidence that Anchor Glass hired white employees with criminal records in the past, the Defendant's shifting rationale for the decision not to hire Lange—and the jury's resulting disbelief therein—was strong evidence of discrimination. This combination of circumstantial evidence was sufficient to support the jury's verdict in favor of Lange. *See Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (depending on the strength of the circumstantial evidence, "[e]ach type of evidence is sufficient by itself . . . to support a judgment for the plaintiff; or they can be used together" (citation and quotation marks omitted)).

Anchor Glass insists the evidence was insufficient to support a finding of discrimination because Lange failed to provide an apt comparator as required to prove a *prima facie* case. Even if satisfaction of the *prima facie* case was dispositive at this stage, which it is not, the employees Lange pointed to at trial were sufficiently comparable to permit the jury to find in his favor. The similarly-situated inquiry calls for a "flexible, common-sense examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation and quotation marks omitted). Terron Gregg ("Gregg") and Eric Gosmeyer ("Gosmeyer") were two employees hired in an earlier cycle, both of whom were white and had criminal records. Although someone other than Petty made the decision to hire Gregg and Gosmeyer, Petty was aware of the hiring decisions and held herself out as being responsible for recruiting and new-hire processing at the time they were hired. She admittedly requested criminal background checks for Gregg and Gosmeyer and was aware they were hired despite their convictions. As the sole decision-maker in Lange's case, she had the power to affect a similar outcome, especially in light of Lange's experience and the glowing recommendation by the managers who interviewed him in person. The circumstances here allow for a reasonable jury to draw a fair comparison between Lange and the white employees hired before him despite the differing decision-makers. *Cf. Lane v. Riverview Hosp.*, 835 F.3d 691, 696 (7th Cir. 2016) (stating that knowledge of the decision to discipline the plaintiff and power to push for a different response was enough for a reasonable jury to treat supervisor as sufficiently involved in two cases to allow a fair comparison).

At bottom, the evidence of Anchor Glass's decision to hire white applicants with criminal records, paired with its shifting explanation for the decision not to hire Lange, was sufficient to support the jury's conclusion that Lange was the victim of racial discrimination. Construing the

evidence in Lange's favor, the jury clearly had a legally sufficient evidentiary basis to find in his favor. Therefore, Anchor Glass's Renewed Motion for Judgment as a Matter of Law is **denied**.

**B.    Anchor Glass's Rule 59 Motion or for Remittitur**

Alternatively, Anchor Glass moves for a new trial and to amend the judgment under Rule 59 or for remittitur. Anchor Glass seeks a new trial arguing that the verdict was against the weight of the evidence, it discovered new evidence after trial, and the jury's damages awards were monstrously excessive and not rationally related to the evidence presented. Anchor Glass also argues the judgment must be amended to comply with Title VII's caps on compensatory and punitive damages. The Court will address each argument in turn.

**1.    Jury Verdict**

The Court will uphold the jury verdict so long as there is a reasonable basis in the record to support it. As explained above in the denial of Anchor Glass's Rule 50 motion, the verdict in favor of Lange was adequately supported by the evidence at trial and is not against the manifest weight of the evidence. In determining whether Lange was the victim of intentional racial discrimination, the jury was entitled to consider Petty's credibility to decide whether the company's reasons for hiring Lange were truthful. The jury determined she was not credible and the real reason for the failure to hire Lange was discriminatory. That evidence, together with evidence that the company previously hired at least two white employees with criminal records, is sufficient to support the verdict.

Anchor Glass contends the jury's verdict was tainted by "three improper influences," but this argument lacks merit (Filing No. 286 at 5). First, Anchor Glass complains that Plaintiff's counsel improperly emphasized Petty's lack of credibility, a strategy permitted by the rules of evidence. As the Defendant acknowledges, a key factor in Plaintiff's theory of the case was

whether the company's reason for firing him was pretextual.  To prove this point, Lange was permitted to cast doubt on the decision-maker's proffered reason for the decision.

Second, Anchor Glass's argument that the fervor with which Lange's counsel chose to persuade the jury in his opening statement and closing argument tainted the verdict is not persuasive.  Particularly when the jury was instructed on the proper standard for determining Title VII discrimination cases.  The Court instructed the jury that to find for Lange, it must find that Anchor Glass would have hired him had he not been African American, and neither bias nor sympathy nor prejudice should influence their decision (Filing No. 205-2 at 2, 17).  The Court also instructed that neither opening nor closing statements constitute evidence, and the verdict should be based on witness testimony, exhibits admitted in evidence, and any stipulations by the parties. *Id.* at 5.

Third, Anchor Glass renews its objection to the admission of evidence concerning the white employees with criminal convictions who were hired by Liz McMahon.  As the Court ruled during trial, evidence that Anchor Glass previously hired white men with criminal records for the same position Lange sought was directly relevant to the question of whether Lange was treated differently because of his race.  That McMahon was not the decision-maker in Lange's case was not dispositive given Petty's involvement in the previous hiring process and her awareness of those employees' criminal records.  Anchor Glass's reliance on *Shick v. Illinois Department of Human Services* is misplaced given that the issue there was plaintiff's attempt to admit evidence in support of a claim not before the jury.  307 F.3d 605, 611 (7th Cir. 2002).  Here, by contrast, the sole issue for consideration at trial was whether Anchor Glass was liable for racial discrimination, and evidence that it previously hired similarly situated individuals was directly relevant to that issue.

The jury's verdict was clearly not tainted by these purported improper influences.

13

## 2.  **Newly Discovered Evidence**

Next, Anchor Glass argues it is entitled to a new trial because, following the jury trial, it discovered evidence that Lange committed perjury and omitted information about his drug use and employment history during discovery (Filing No. 286 at 11).  To succeed on a Rule 59 motion based on newly discovered evidence, the movant must show: (1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result.  *Cincinnati Life Ins. Co.*, 722 F.3d at 955.  The third and fifth prong are dispositive.

Anchor Glass contends that Lange provided false discovery responses, deposition testimony, and trial testimony concealing the fact that he had been hired by another bottling company, MGPI Distillery ("MGPI"), in April 2021 and fired two months later during his probationary period for performance issues (Filing No. 286 at 11).  Anchor Glass argues the jury may have reached a different conclusion had it been aware of Lange's alleged perjury and the facts he tried to conceal because the evidence would have weighed on his credibility.  *Id.* at 16.  It also says the jury would have viewed Petty's concerns about rehiring Lange differently had it known about his 2021 performance problems at MGPI.  *Id.*

Anchor Glass is grasping at straws. This is precisely the sort of impeachment evidence that the Seventh Circuit has held is insufficient to support a new trial.  Recall that Anchor Glass's discriminatory conduct occurred in 2018.  Evidence that Lange was employed and later fired from a job in 2021—three years after Anchor Glass failed to hire him—would serve only to challenge the veracity of his trial testimony that he resigned his employment at MGPI because he found a new job.  As Lange recalls, Anchor Glass skillfully challenged Lange's credibility by highlighting

14

inaccuracies in his application for employment and his EEOC charge, as well as raising his prior felony conviction to suggest he was untruthful.  (*See* Filing No. 306 at 10).  The proposed new evidence concerning Lange's credibility would have been merely cumulative and unlikely to affect the result.  The evidence also would not have been relevant or admissible for the purpose of establishing that Petty failed to hire him because of his performance issues at MGPI; one has nothing to do with the other and invites an improper inference regarding Lange's propensity for performance issues, in violation of the Federal Rules of Evidence.

Second, Anchor Glass asserts that it discovered evidence that Lange continues to use recreational drugs and new evidence concerning compensation he received from various employers since 2018 (Filing No. 286 at 19–20).  Again, however, evidence of Lange's alleged drug use has no bearing on the substantive issue of whether Anchor Glass violated Title VII and only serves to impeach Lange's credibility.

Anchor Glass also argues that evidence that Lange was compensated handsomely with other employment after being denied employment with Anchor Glass undermines his claim that he suffered emotional distress over being passed over at Anchor Glass.  *Id.* at 22–23.  The Court does not agree.  The jury heard testimony that Lange's distress stemmed from his desire to be employed with Anchor Glass specifically, given the company's prestige and Lange's desire to work alongside his brother, who also worked there. Having had the benefit of observing Lange's testimony concerning the emotional toil of being denied employment because if his race, the Court does not doubt Lange's distress. That Lange was ultimately able to obtain employment and was paid accordingly says little about the lasting emotional effects of losing the selector packer position at Anchor Glass because of race discrimination.

Because the alleged new evidence does little to affect Lange's credibility, and it is not likely to produce a new result, it does not warrant granting the Defendant a new trial.

**3.  Damage Awards**

Anchor Glass also argues it is entitled to a new trial or remittitur because the jury's compensable and punitive damages awards were against the weight of the evidence and monstrously excessive (Filing No. 286 at 23).  "In considering a request for remittitur," the court must grant deference to the jury's verdict and limit its inquiry to three questions: "'whether the award is monstrously excessive; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas[;] and whether the award is roughly comparable to awards made in similar cases.'" *Estate of Northington v. City of Indianapolis*, No. 1:21-cv-00406, 2024 WL 3470820, at *6 (S.D. Ind. July 18, 2024) (alteration in original) (quoting *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 566 (7th Cir. 2006)).

First, the Defendant argues the $90,000.00 compensatory damage award bears no rational relation to the evidence and is monstrously excessive because Lange presented no evidence of compensable harm. By contrast, Lange contends that he and his brother provided credible testimony concerning the impact of the discrimination on the Plaintiff's life. In particular, Lange testified he was disappointed and heartbroken about not receiving the job, especially in light of his previous dealings with the company and his efforts to turn his life around.

The Court agrees with Lange.  He testified that he was "heartbroken" over not receiving the job given that he "thought things would be different" after his conviction.  (Filing No. 215 at 242:5–6). He testified that his feelings of despair remained for years following the decision. *Id*. Lange's brother testified that Lange was "devastated," and averred that getting the job at Anchor

16

Glass would have been "equivalent winning the lottery…it's a very, very, good job, pension, 401(k) …it's a big deal." *Id*. at 181-182. Moreover, Lange points to a similar case, *Tullis v. Townley Engineering & Manufacturing Co.*, 243 F.3d 1058, 1067–68 (7th Cir. 2001), where the court found that an award of $80,185.68 was supported by evidence that the plaintiff "felt low" and "degraded" because of being laid off. Defendant, on the other hand, points to a non-binding and unpersuasive case in which the jury awarded the plaintiff $500,000.00 in compensatory damages and $5 million in punitive damages. *Duis v. Franciscan All. Inc.*, No. 20-cv-78, 2023 WL 3221805, at *8 (N.D. Ind. May 3, 2023). Unlike the *Duis* plaintiff, Lange does not claim to have suffered issues requiring medical attention and proof thereof. In such cases, "[a]n award for nonpecuniary loss can be supported . . . solely by a plaintiff's testimony about his or her emotional distress." *Tullis*, 243 F.3d at 1068 (citing *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 580 (7th Cir.1996)). Given the much more meager figure awarded here to compensate the emotional toil caused by racial discrimination, the Court finds that the evidence at trial supports the $90,000.00 compensatory damages award and is not monstrously excessive.

Second, Defendant argues the $1,000,000.00 punitive damages award is monstrously excessive and against the weight of the evidence. The Court disagrees. Punitive damages may be awarded when the jury finds the defendant acted with reckless disregard for the plaintiff's federal rights. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001). The Court may only reduce the award when it is "clearly excessive." *West v. Western Cas. & Sur. Co.*, 846 F.2d 387, 399 (7th Cir. 1988). As explained above, the jury was permitted to consider Petty's testimony and the shifting rationale for the company's failure to hire Lange and infer intentional discrimination therefrom. The evidence clearly supported a finding that Anchor Glass's shifting reasons for not hiring Lange was a cover-up in flagrant violation of Title VII, thus warranting a large punitive

damages award. *See Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 486 (7th Cir. 2003). In addition, Petty's knowledge that Anchor Glass previously hired white employees with criminal records paired with her decision not to hire Lange, an African American who was originally deemed a top candidate for the position, could lead a rational jury to find that she acted with reckless disregard for Lange's right not to be discriminated against based on his race. Therefore, the Court finds the punitive damages award was not against the weight of the evidence and does not require a new trial.

### 4. **Damages Cap**

Finally, Anchor Glass contends the judgment must be amended to comply with Title VII's statutory cap on compensatory and punitive damages, which limits damages in employment discrimination cases to a maximum of $300,000.00. 42 U.S.C. § 1981a(b)(3). Because the jury awarded $90,000.00 in compensatory damages and $1,000,000.00 in punitive damages, the company says the award must be reduced to comply with the statutory maximum (Filing No. 286 at 23). In response, Lange argues this argument is premature, given that discrimination claims under § 1981 are not so limited, and he seeks to amend his complaint to add such a claim (Filing No. 306 at 16).

The Court agrees with Anchor Glass. Though a jury may award more than $300,000.00 under Title VII, "the court must reduce the amount to $300,000." *Sommerfield v. Knasiak*, 967 F.3d 617, 624–25 (7th Cir. 2020). Because the Court concludes below that Lange may not at this late date amend his complaint to add a § 1981 discrimination claim, the total amount recoverable for both compensatory and punitive damages for Lange's Title VII claim cannot exceed $300,000.00. The judgment shall be amended accordingly.

In sum, Anchor Glass's Rule 59 Motion or for Remittitur is **granted in part** and **denied in part**. The Court grants the motion to amend the judgment to comply with Title VII's $300,000.00 cap on damages, but the Court denies the motion for a new trial or for remittitur because the verdict was not against the weight of the evidence and the damages awards bore a rational connection to the evidence and were not monstrously excessive.

**C.      Lange's Motion for Leave to File Amended Complaint**

Lange moves for leave to file an amended complaint pursuant to Rule 15(b)(2). Lange's original complaint asserted a cause of action under Title VII and the Indiana Civil Rights Act, Ind. Code §§ 22-9-1-1 to 18 (Filing No. 1). Lange alleged that after applying for the position and disclosing a prior criminal conviction, Anchor Glass refused to hire him despite his years of experience and its decision to hire similarly situated white employees with criminal records. *Id.* The parties conducted discovery and Lange ultimately confirmed he intended to prove Anchor Glass's "refusal to hire Plaintiff was in violation of Title VII of the Civil Rights Act of 1964 and the Indiana Civil Rights Act, Ind. Code § 22-9-1 et seq." (Filing No. 29).

In his motion to amend the complaint, for the first time, Lange seeks to assert a claim for race discrimination under 42 U.S.C. § 1981. Lange initiated this action on July 13, 2020. (Filing No. 1). Since that time, none of the pretrial pleadings, motions, or requests made before the Court identifies § 1981 as a basis for liability. Both Title VII and § 1981 prohibit racial discrimination, Title VII in employment and § 1981 in the making and enforcing of private contracts. 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 1981. To succeed on a Title VII race discrimination claim, the plaintiff must prove his race was at least a "motivating factor" in the challenged employment decision. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). To prove race discrimination under § 1981, the plaintiff must show that race was a but-for cause of his injury. *Id.* (citing *Comcast*

*Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020)). Title VII limits damages for employment discrimination to $300,000.00, while § 1981 has no statutory limitation on damages. *See* 42 U.S.C. § 1981a(b)(3); *Sommerfield*, 967 F.3d at 624–25.

Lange argues his post-judgment request to assert a § 1981 claim should be permitted because the issue of race discrimination was tried by express consent of the parties. He argues that consent was established because the jury was instructed on the "but-for cause" standard for race discrimination claims under § 1981 rather than the "motivating factor" standard for Title VII claims. Because the jury found Anchor Glass liable under Title VII, Lange concludes that the verdict necessarily supports a judgment that Anchor Glass violated § 1981. He insists there is no additional evidence Anchor Glass could have presented to defend a § 1981 claim. He also argues that permitting the amendment would "subserve the presentation of the merits of the action because it would give full effect to the jury's verdict of compensatory and punitive damages." (Filing No. 274 at 3–5).

In response, Anchor Glass asserts that it neither expressly nor impliedly consented to a § 1981 claim because Lange failed to provide notice of his intent to bring a § 1981 claim, the standards of proof under each statute are distinct, and there was never any indication Anchor Glass intended to try a § 1981 claim. In Anchor Glass's view, the motion is a thinly veiled attempt to circumvent the statutory cap on damages for claims brought under Title VII. Anchor Glass argues an amendment at this stage would prejudice it and deprive it of the opportunity to defend against the higher causation standard for § 1981 claims and to tailor its strategy regarding unlimited damages permitted under that statute (Filing No. 297 at 8–17).

Anchor Glass is correct. Although race discrimination claims under Title VII and § 1981 are analytically similar, nothing in the record spanning nearly five years suggests that Anchor Glass

20

consented to try a race discrimination claim under § 1981. To allow this new claim after trial would vastly expand the amount of damages to which Lange may be entitled and would deprive Anchor Glass of the opportunity to tailor its litigation strategy with respect to damages. For instance, Anchor Glass asserts that it may have declined to request discovery or offer much evidence on the issue of damages at all (Filing No. 297 at 16). Moreover, the Court is not persuaded that adding a § 1981 claim would preserve the merits of the action because although a jury may award more than $300,000.00 under Title VII, "the court must reduce the amount to $300,000" to conform with the statute. *Sommerfield*, 967 F.3d at 624. The amendment increasing a defendant's liability would deny it "the opportunity to make a 'realistic appraisal of the case, so that [its] settlement and litigation strategy [could be] based on knowledge and not speculation.'" *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 717 (4th Cir. 1983) (second alteration in original) (quoting Fed. R. Civ. P. 26(b)(2) advisory committee's note to 1970 amendment).

Lange maintains that Anchor Glass consistently argued that Lange's race was not the but-for cause for its failure to hire him and it cannot now avoid a jury verdict to that effect. True, but Anchor Glass was entitled to invoke lack of but-for causation as an affirmative defense to stave off damages for the Title VII claim. *Comcast*, 589 U.S. at 337 (citing 42 U.S. §§ 2000e–2(m), 2000e–5(g)(2)(B)). That evidence relevant to both Title VII and § 1981 was introduced at trial does not mean the parties consented to try the claim that was missing from the pleadings, discovery, and summary judgment stage. Said differently, Anchor Glass could not have reasonably been expected to defend a § 1981 race discrimination claim simply because evidence relevant to both claims was introduced at trial and could be used to reach the same result under a different theory of liability. *See Ippolito*, 864 F.2d at 456 (holding that defendant's "failure to object to . . . evidence that was relevant to plaintiffs' [15 U.S.C.] § 1681b claim cannot be viewed as an express or implied

consent of the case under a § 1681e(a) theory"); *Reynolds*, 737 F.3d at 1106 (affirming denial of plaintiff's post-evidence motion to add a retaliation claim under the Rehabilitation Act because plaintiff failed to raise the new theory before closing arguments and the evidence was not intended to "meet a newfangled retaliation claim that everyone understood was lurking beneath the surface").

*Creative Demos, Inc. v. Wal-Mart Stores, Inc.*, 955 F. Supp. 1032 (S.D. Ind. 1997), relied on by Lange, is inapposite. The parties there tried the case on a promissory estoppel theory based on an alleged promise made by the defendant that the plaintiff would be the exclusive provider of food demonstration services in all the defendant's stores until September 1, 1991. *Id.* at 1036. The Court granted judgment as a matter of law on the merits of the promissory estoppel claim but upheld the damages award on an unjust enrichment theory. *Id.* at 1044. The Court reasoned that the claim of unjust enrichment was tried by both the express and implied consent of the parties because the jury "necessarily considered the question of unjust enrichment and found that [the defendant] was unjustly enriched." *Id.* at 1045. On appeal, the Seventh Circuit explained that unjust enrichment was "really what the parties were arguing about at trial" because the evidence showed that the defendant had benefitted from the plaintiff's substantial efforts in creating food demonstrations without proper compensation. *Creative Demos, Inc. v. Wal-Mart Stores, Inc.*, 142 F.3d 367, 371–72 (7th Cir. 1998).

Here, by contrast, the jury never considered whether Anchor Glass violated § 1981 and was specifically instructed that the claim arose under Title VII. As courts have repeatedly recognized, "a court will not imply a party's consent to try an unpleaded claim 'merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim.'" *Reynolds*, 737 F.3d at 1106 (quoting *Ippolito*, 864 F.2d at 456 (quoting *Quillen v. Int'l Playtex Inc.*, 789 F.2d

1041, 1044 (4th Cir. 1986))); *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053 (2d Cir.), *cert. denied*, 474 U.S 844 (1985).  Though a plaintiff may prove race discrimination under both Title VII and § 1981, the specific question before the jury—and before the Court for the life of the litigation—was limited to whether Anchor Glass violated Title VII.  (*See, e.g.*, Filing No. 29 at 1 (Plaintiff's Statement of Claims) ("Defendant's refusal to hire Plaintiff was in violation of Title VII of the Civil Rights Act of 1964."); Filing No. 71 at 7 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment) (explaining the legal standard for Title VII cases); Filing No. 205-2 at 3 (Final Jury Instructions) ("Mr. Lange's claim of race discrimination is brought under Title VII to the Civil Rights Act of 1964, as amended, often called Title VII.")); *see also Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992) (finding no consent where defendant "had no warning that evidence manifestly admissible because relevant to the conspiracy charge would also be used to establish the existence of an enterprise to which no one in the course of th[e] litigation had alluded").

Finally, Lange argues Anchor Glass consented to the § 1981 claim because the jury was instructed on the "but-for" causation standard rather than the "motivating factor" standard.  As Anchor Glass rightly notes, the Committee on Pattern Civil Jury Instructions directs courts to use Pattern Instruction 3.01 for claims arising under multiple statutes, including Title VII and § 1981.  *See* The Committee on Pattern Civil Jury Instructions of the Seventh Circuit, *Federal Civil Jury Instructions of the Seventh Circuit* (2017 rev.), 3.01 ("General Employment Discrimination Instructions").  The Committee recognized that while other courts use the "motivating factor" language in all Title VII cases, the Seventh Circuit believes it is better to streamline the instructions for lay jurors in all non-mixed motive discrimination cases.  *See id.* (citing *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994) (explaining, in an age discrimination case, "it is especially

important to write instructions that are as clear and simple as possible")).  This does not mean that in all employment discrimination cases, the parties are deemed to have consented to try claims under each statute to which the instruction applies.  As relevant here, Anchor Glass had no reason to suspect that an additional § 1981 claim was lurking beneath the surface simply because the jury instruction on the causation standard would be identical.  This is especially true given that the jury instructions elsewhere provide that Lange's claim arose under Title VII and Lange consistently affirmed, throughout the litigation, that Title VII was the only relevant statute for purposes of his lawsuit.

In sum, Lange has not established that Anchor Glass had a fair opportunity to defend a race discrimination claim under § 1981.  Lange's belated request to add an entirely new claim would affect Anchor Glass's discovery and trial strategy, and Lange had plenty of opportunities to make his request before now.  *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (affirming denial of Rule 15 amendment for punitive damages because "[a]n amended complaint three years into the litigation affects the defendant's discovery and trial strategy").  Therefore, Lange's Motion for Leave to File Amended Complaint (Filing No. 274) is **denied**.

### IV.   CONCLUSION

For the reasons explained above, Plaintiff Cory Lange's Motion for Leave to File Amended Complaint (Filing No. 274) is **DENIED**.  Defendant Anchor Glass Container Corporation's Renewed Motion for Judgment as a Matter of Law (Filing No. 282) is **DENIED**, and its Rule 59 Motion or for Remittitur (Filing No. 284) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **granted** with respect to Defendant's request to reduce the total compensatory and punitive damages award to $300,000.00, to comply with the statutory maximum.  In all other respects, the Rule 59 motion is **denied**.

24

The remaining post-trial Motions for Bill of Costs (Filing No. 276) and Motion for Award of Attorneys' Fees, Expenses, and Costs (Filing No. 277) will be ripe for ruling no later than November 13, 2025 (*see* Filing No. 317).  Following that ruling, an Amended Final Judgment will issue under separate order.[1]

      **SO ORDERED**.

Date:   10/30/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Stephen E. Imm
FINNEY LAW FIRM, LLC
stephen@finneylawfirm.com

David Kuhnz
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
david.kuhnz@ogletree.com

Christopher C. Murray
Ogletree Deakins
christopher.murray@ogletree.com

Ellen Pactor
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
ellen.pactor@ogletree.com

Grant E. Swartzentruber
SWARTZENTRUBER BROWN, ATTORNEYS AT LAW LLC
grant@swartzentruberlaw.com

William Dean Young
Office of the Indiana Attorney General
william.young@atg.in.gov

---

[1] The Court intends to rule promptly on the two remaining motions in this case. To avoid the possibility of piecemeal appeals, following that ruling, the Court will issue an Amended Final Judgment which encompass all issues in this case.