UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CORY B. LANGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-00160-TWP-KMB |
| ) | |
| ANCHOR GLASS CONTAINER ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER ON PLAINTIFF'S MOTIONS FOR FEES AND COSTS,
DEFENDANT'S MOTION FOR LEAVE TO FILE SURREPLY, AND
DEFENDANT'S MOTION TO EXTEND STAY OF EXECUTION OF JUDGMENT**

This matter is before the Court on Plaintiff Cory Lange's ("Lange") Bill of Costs and Motion for Attorney Fees (Filing No. 276; Filing No. 277), and Defendant Anchor Glass Container Corporation's ("Anchor Glass") Motion for Leave to File Surreply and Motion to Extend Stay of Execution of Judgment and Taxation of Costs (Filing No. 336; Filing No. 326). In 2020, Lange sued Anchor Glass for race discrimination under Title VII of the Civil Rights Act of 1964. In February 2025, a jury returned a verdict in favor of Lange. The Court then issued a Final Judgment, which was followed by several post-trial motions, including the instant motions. For the following reasons, Anchor Glass's Motion for Leave to Surreply is **granted in part** and **denied in part**, Lange's Bill of Costs and Motion for Fees are **granted**, Anchor Glass's Motion to Extend Stay is **denied,** and the Court sets an **appeal bond i**n the amount of $744,282.74.

### I.    BACKGROUND

In April 2018, Lange, an African American man, applied to work at Anchor Glass. Anchor Glass ultimately declined to extend Lange an offer and instead hired three white applicants. Lange subsequently initiated this lawsuit under Title VII and the Indiana Civil Rights Act, seeking

damages, reinstatement, back pay, and front pay (Filing No. 1). In 2022, summary judgment was granted in favor of Anchor Glass, but Lange appealed, and the Seventh Circuit reversed. *Lange v. Anchor Glass Container Corp.*, No. 22-2902, 2023 WL 4449211, at *2–3 (7th Cir. July 11, 2023). On remand, Lange voluntarily dismissed his state law claim, and the parties proceeded to jury trial on the Title VII claim. The jury returned a verdict in favor of Lange, awarding him $90,000.00 in compensatory and $1,000,000.00 in punitive damages (Filing No. 207). The case was then set for a bench trial on the remedy of back pay and front pay, but Lange unexpectedly moved to vacate the bench trial (Filing No. 267). Lange's claims for equitable relief were dismissed with prejudice (Filing No. 269), and final judgement was entered on February 11, 2025. (Filing No. 270).

The parties then filed several post-trial motions. In addition to the pending motions, Lange filed a Motion for Leave to File Amended Complaint, and Anchor Glass filed a Renewed Motion for Judgment as a Matter of Law and Motion for Remittitur. On October 30, 2025, the Court ruled on those post-trial motions, denying Lange leave to amend, denying Anchor Glass's request for judgment in its favor, and reducing Lange's compensatory and punitive damages award from $1,090,000.00 to $300,000.00 to comply with Title VII's damages cap (Filing No. 318). On November 26, 2025 Anchor Glass filed a Notice of Appeal of all rulings adverse to it, and noted that the appeal does not encompass Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Costs, which remains pending with the district court. (Filing No. 328). The remaining post-trial motions—Lange's Bill of Costs and Motion for Attorney Fees, and Anchor Glass's Motion for Leave to File Surreply and Motion to Extend Stay of Execution of Judgment—are now ripe for the Court's review.

**II.     LEGAL STANDARDS**

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54(d)

creates "a strong presumption that the prevailing party will recover costs, with the ultimate decision resting within the district court's discretion." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997). "The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them." *Id.* Absent a showing of clear abuse of discretion, a district court's award of costs will not be overturned "[a]s long as there is statutory authority for allowing a particular item to be taxed as a cost." *Id.*

"Statutory authority exists for the award of costs in this case." *Cengr v. Fusibond Piping Sys.*, 135 F.3d 445, 454 (7th Cir. 1998). The types of costs that may be recovered are enumerated in 28 U.S.C. § 1920. When awarding costs, district courts exercise discretion in determining whether the costs were reasonable and necessary to the litigation. *Id.* at 453–54.

Further, pursuant to 42 U.S.C. § 2000e–5(k) of Title VII, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fee (including expert fees) as part of the costs." A prevailing plaintiff is entitled to fees and costs "in all but special circumstances." *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 417 (1978); 42 U.S.C. § 1988.

### III.   DISCUSSION

To put it mildly**,** this dispute has been zealously litigated by both sides for several years. As the prevailing party in this litigation, Lange seeks the recovery of his attorney's fees and expenses as provided by statute. 42 U.S.C. § 2000e-5(k). The Court will begin by briefly addressing Anchor Glass's Motion for Leave to File Surreply, then resolve Lange's Bill of Costs and Motion for Attorney Fees, before turning to Anchor Glass's Motion to Extend Stay of Execution of Judgment.

A.      **Motion for Leave to File Surreply**

Anchor Glass seeks to file a surreply in opposition to Lange's Bill of Costs and Motion for Fees because Lange's reply cites new evidence—defense counsel's time entries that were produced after Anchor filed its response. Lange did not respond to Anchor Glass's request.

"The purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 09-cv-340, 2010 WL 1258052, at *2 (S.D. Ind. Mar. 25, 2010) (citation modified). "New arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, No. 14-cv-63, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015) (citation modified). "Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response." *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019).

One portion of Anchor Glass's Surreply, Section B, properly addresses the new evidence cited in Lange's reply. The other portion, Section A, does not address this new evidence and instead rehashes an argument raised in Anchor Glass's response about the fees for Lange's local counsel (Filing No. 301 at 25). Lange's reply to that argument did not raise new issues, so no surreply is allowed (Filing No. 334 at 15). The Motion for Leave is therefore **granted** as to Section B but **denied** as to Section A.

B.  **Bill of Costs and Motion for Attorney Fees[1]**

The parties agree that Lange is entitled to his fees and costs but dispute the appropriate amount. Lange's counsel seeks a total of $426,282.74: $409,494.75 in attorneys' fees, $7,445.63 in expenses, and $9,342.36 in costs (Filing No. 276; Filing No. 277). The attorneys' fees are comprised of more than a thousand hours of work by thirteen employees of Finney Law Firm and Grant Swartzentruber of Swartzentruber Law.

To calculate a reasonable attorney fee to which the prevailing party in a Title VII action is entitled, courts employ the lodestar method, which multiplies the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014); *see also Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) ("The touchstone for a district court's calculation of attorney's fees is the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended."). In determining the lodestar, the court must bear in mind that a defendant is not required to pay for hours that are "excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (citing *Hensley*, 461 U.S. at 434). The lodestar, however, is just the starting point. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018). After calculating the lodestar, "[t]he district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856–57 (7th Cir. 2009).

---

[1] Anchor Glass asks the Court to defer ruling on Lange's motions for fees and costs until it resolves Anchor Glass's Renewed Motion for Judgment as a Matter of Law (Filing No. 301 at 10). The Court has already resolved the Renewed Motion, so the request to defer ruling on the instant motions is **denied as moot**.

Anchor Glass challenges the reasonableness of the $595.00 hourly rate requested by lead counsel, Robert Imm ("Imm"), and the amount of hours expended by Lange's counsel.

1. **<u>Hourly Rate</u>**

A reasonable hourly rate is "derived from the market rate," and "[t]he best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Johnson*, 668 F.3d at 933 (citation and quotation marks omitted). Anchor Glass argues that Imm's requested hourly rate is unreasonable for three reasons.

First, there is no evidence that $595.00 is Imm's actual hourly rate (Filing No. 301 at 12–13). Although evidence of an attorney's actual rate is the "best evidence" of a reasonable market rate, the Seventh Circuit has recognized "the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements" and "advised district courts to rely on the 'next best evidence' of an attorney's market rate, namely 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir.1999)). Imm used a contingent fee arrangement in this case, so the lack of evidence of his actual hourly rate does not bar recovery or show that his requested hourly rate is unreasonable. *See Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001) ("The fee applicant can meet his initial burden 'either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases.'" (quoting *Spegon*, 175 F.3d at 556)).

Second, in another case—*Marshall v. IT Guyz Solutions, LLC*, No. 22-cv-493, 2024 WL 4574139 (S.D. Ohio Oct. 24, 2024)—Imm averred that his hourly rate was $395.00 (Filing No. 301 at 13–14). As Lange notes on reply, though, the *Marshall* case was tried in Ohio and involved

6

claims under the Fair Labor Standards Act ("FLSA") (Filing No. 334 at 7). Lange's argument that market rates are "inherently local" and that Title VII and FLSA claims are "qualitatively different" is well taken. *Id.*; *see Kennington v. Cottey*, No. IP 02-0648, 2005 WL 555367, at *4 (S.D. Ind. Mar. 8, 2005) (finding fee awards from other states to be unpersuasive; "Market rate is defined as the rate that lawyers of similar ability and experience *in the community* normally charge their paying clients for the kind of work in question." (citation modified; emphasis in original)); *Spegon*, 175 F.3d at 555 n.6 (explaining that hourly rates in non-FLSA cases "are not particularly relevant" in determining market rates for FLSA cases); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707–08 (7th Cir. 2001) (affirming district court's determination that affidavits of market rates "were of limited probative value because they failed to distinguish between employment-related civil rights litigation and FLSA overtime cases"; "Judges in the Northern District have also noted that FLSA cases are less complex than Title VII and other employment-related civil rights litigation."). The evidence in *Marshall* therefore does not show that Imm's requested hourly rate in this case, in this market, is unreasonable.

Third, Anchor Glass argues that the attorney declarations cited by Lange do not establish that $595.00 is a reasonable hourly rate (Filing No. 301 at 15–16). Lange offers affidavits from three Indiana attorneys—Sandra Blevins, Robert Kondras, and Benjamin Ellis.

Attorney Blevins, who has practiced employment law in Indiana for nearly twenty-nine years, states that she is paid a usual and customary hourly rate of $725.00 (Filing No. 277-6 ¶¶ 1, 8). Attorney Blevins further states that she was awarded attorney fees at an hourly rate of $595.00 in *Edge v. Board of School Trustees of Salem Community School Corporation*, No. 18-cv-00167, 2021 WL 3206475 (S.D. Ind. July 29, 2021). Anchor Glass argues that Attorney Blevins' declaration is unpersuasive because it "does not identify the type or types of matters in which she

receives this rate" and "does not claim that she has any paying clients in single-plaintiff Title VII discrimination cases, like this case, who pay this rate." (Filing No. 301 at 16). Anchor Glass analogizes this case to *Thomas v. Shoshone Trucking LLC*, No. 20-cv-00209, 2023 WL 2649490 (S.D. Ind. Mar. 27, 2023), in which the fee petitioner failed to describe the type of cases in which he billed clients at his purported hourly rate. However, *Thomas* does not state that "similar work" is limited to cases with the same exact number or type of plaintiffs, or the exact same legal claims; Anchor Glass cites no authority supporting its position that "similar work" is so limited. Further, *Thomas* is readily distinguishable. In *Thomas*, the fee petitioner stated that he litigated employment law and commercial cases but failed to "state whether he works on both plaintiff-side and defense-side employment cases, or whether he charges the same rate in both employment and commercial litigation cases." *Thomas*, 2023 WL 2649490, at *4. Attorney Blevins, by contrast, clearly states that she represents individuals in employment law cases (Filing No. 277-6 ¶¶ 1, 4).

Attorney Blevins' fee award in *Edge* further shows that an hourly fee of $595.00 is reasonable here because the award in *Edge* (a single-plaintiff Family and Medical Leave Act case brought by a teacher) was based on evidence that actual clients paid Attorney Blevins at that rate for similar work. *Edge*, 2021 WL 3206475, at *7; *see Buffone v. Rosebud Restaurants, Inc.*, No. 05 C 5551, 2007 WL 9817882, at *4 (N.D. Ill. Jan. 3, 2007) (finding that Title VII case was "not so dissimilar" from FMLA or Pregnancy Discrimination Act cases "as to be irrelevant to the determination of a reasonable rate" because both cases alleged discrimination and retaliation).

Attorney Kondras, who has practiced employment law in and around Indiana for over twenty-eight years, states that in his opinion, Imm's requested hourly rate is reasonable (Filing No. 277-7 ¶¶ 1, 9). Anchor Glass again cites *Thomas* in arguing that Attorney Kondras's opinion has no probative value. In *Thomas*, the Court found that declarations "simply stat[ing] that in the

8

declarant's opinion, $400.00 per hour is a reasonable fee" did not establish "'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.'" *Thomas*, 2023 WL 2649490, at *4 (quoting *Spegon*, 175 F.3d at 555)). Attorney Kondras, however, does not simply state that $595.00 is a reasonable rate. He specifies:

> In my opinion, and based on my experience, $595.00 would be a very reasonable rate to charge clients on an hourly basis *in employment-related legal matters in the State of Indiana*. It is further my opinion, based on my experience, that $595.00 per hour is at or below the current market rate for *lawyers of reasonably comparable skill, experience, and reputation in the community* who have prevailed *in similar fee-shifting lawsuits*.

(Filing No. 277-7 ¶ 9 (emphases added)). Attorney Kondras's declaration is readily distinguishable from the vague, broad declarations in *Thomas*, and it is evidence of the hourly rates of similarly experienced attorneys in similar cases. *See Pickett*, 664 F.3d at 640.

Attorney Ellis's declaration states that he has practiced employment law in Indiana for over fifteen years and currently charges clients an hourly rate of $595.00 (Filing No. 277-8 ¶¶ 1, 7). Anchor Glass again contends that Attorney Ellis fails to specify "'what type of clients he bills at that rate.'" (Filing No. 301 at 18 (quoting *Thomas*, 2023 WL 2649490, at *4)). Anchor Glass is incorrect. Attorney Ellis plainly states that he practices employment law, and that his firm "focuse[s] on representing employees in employment disputes." (Filing No. 277-8 ¶ 3).

The declarations cited by Lange adequately show that an hourly rate of $595.00 is reasonable in this case. Anchor Glass has not persuaded the Court that this evidence is insufficient or unpersuasive, and it offers no evidence that Imm's requested rate is unreasonable.

Lange argues that his evidence shifts the burden to Anchor Glass to show that a lower hourly rate is appropriate (Filing No. 334 at 7 (citing *People Who Care v. Rockford Bd. of Education*, 90 F.3d 1307, 1313 (7th Cir. 1996))). This argument is misplaced. The burden shifts to the party opposing a fee petition only where the fee petitioner establishes his actual rate. The actual

9

rate is "presumptively appropriate," so the opposing party bears the burden of overcoming that presumption. *See People Who Care*, 90 F.3d at 1311. There is no evidence of Imm's actual rate, so there is no presumption of reasonableness for Anchor Glass to overcome. *See Huff v. Dohrn Transfer Co., LLC*, No. 24-cv-2063, 2025 WL 2051619, at *2 (S.D. Ind. July 21, 2025). Regardless, Imm has met his burden of showing that his requested rate is reasonable.

Anchor Glass does not dispute the reasonableness of the hourly rates for the other individuals who worked on this case. After reviewing the evidence submitted by Lange (Filing No. 277-2 at 4–5; Filing No. 277-3; Filing No. 277-4; Filing No. 277-5), and absent any objection by Anchor Glass, the Court finds that the hourly rates for these other individuals are also reasonable.

**2. Hours Expended**

Anchor Glass argues that Lange's fees should be reduced for two overarching reasons: (a) Lange abandoned his requests for reinstatement, front pay, and back pay; and (b) some of plaintiff's counsels' time entries are unreasonable. The Court will address each argument in turn.

**a. Abandonment of Requests for Relief**

Lange's Complaint originally sought the equitable remedies of reinstatement, back pay, and front pay, in addition to compensatory and punitive damages (Filing No. 1 at 3). Roughly one year into litigation, Lange abandoned his request for reinstatement (Filing No. 301 at 19). Following the jury trial, Lange indicated that he wished to proceed to a bench trial as to back pay and front pay, so the Court set a bench trial for February 11, 2025 (Filing No. 251). On February 6, 2025, Lange filed a motion to vacate the bench trial, stating that he had "decided for personal reasons not to pursue the recovery of back pay and front pay damages in this action." (Filing No. 267). Anchor Glass now contends that Lange's counsel should not be permitted to recover fees for time spent on his abandoned claims.

10

While it may have been frustrating to have trial unexpectedly vacated at the eleventh hour, Lange's voluntary dismissal did not necessarily render his counsels' work unreasonable, unnecessary, or excessive. In assessing the reasonableness of Lange's legal fees, the Court is not concerned with why Lange decided to abandon his equitable claims or why he abandoned them when he did. Model Rules of Pro. Conduct r. 1.2 (A.B.A.). The proper inquiry is whether Lange's *counsel* reasonably expended time on those claims, and the Court finds that they did. Lange's counsel is therefore entitled to recover those fees.

"To be sure, a plaintiff need not prevail on every claim or legal theory to receive fully compensatory attorney's fees." *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010) (citing *Hensley*, 461 U.S. at 435). A full fee award "is the best way of ensuring that competent counsel will be available to all persons with bona fide civil rights claims" because it "make[s] certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases." *Id.* at 453 (Brennan, Marshall, Blackmun, and Stevens, Js., concurring in part). This purpose is served by awarding counsel their fees for time expended on all of Lange's requests for relief. While an attorney should not be permitted to "'lard' winning cases with additional work solely to augment their fees," *id.*, nothing suggests that this is the case here.

The Court further disagrees with Anchor Glass that Lange's attorney fees should be reduced to account for a "partial" success. Before Lange abandoned his request for back pay and front pay, he had obtained a jury verdict in the amount of $1,090,000.00 which is a complete and notable victory. And while monetary damages alone do not measure the success of a Title VII claim, it appears that the equitable remedies that Lange forewent would have had relatively little value (*see* Filing No. 334 at 3; Filing No. 334-1; Filing No. 264 at 10). The Court cannot say that Lange

achieved only a "partial" success in this case, even after abandoning his claims for reinstatement, back pay, and front pay, and the Court declines to adjust the lodestar amount on that basis.

### b. Reasonableness of Hours

Anchor Glass also challenges some of Lange's counsels' time entries for several reasons. To start, Anchor Glass argues that Lange's counsel spent too many hours drafting certain documents, including Lange's Complaint, appellate briefs, and fee request (Filing No. 301 at 23–24). On reply, Lange argues that Anchor Glass is "oversimplif[ying] the process" and explains that the time entries at issue reflect more than simply drafting; they involve collaboration between several different attorneys with varying levels of experience (Filing No. 334 at 9–10). Lange continues that defense counsels' own billing records show that they spent a similar, if not greater, amount of time on similar tasks, *id.* at 12–13. On surreply, Anchor Glass points out that it's counsel consistently spent less time than Lange's counsel preparing the same types of filings (Filing No. 336-1). After reviewing both sides' billing entries, the Court finds that the difference between counsels' time is not so drastically different as to make plaintiff's counsels' hours facially unreasonable. And the Court agrees with Lange's counsel that averaging hours on a "per page" basis, as Anchor Glass does, oversimplifies the drafting process. The Court concludes that the number of hours Lange's counsel spent preparing filings is reasonable.

Anchor Glass also contends that Lange's counsel unreasonably spent time researching "similarly situated employees" and oral argument before the Seventh Circuit, despite later stating that this is not a comparator case and not requesting oral argument on appeal (Filing No. 301 at 23–24). On reply, Lange persuasively notes that attorneys must research issues before deciding whether they are applicable (Filing No. 334 at 12). The Court finds that Lange's counsel did not unreasonably spend time researching issues that he chose not to raise.

Next, Anchor Glass argues that Lange's counsel billed for clerical or duplicative tasks (Filing No. 301 at 24). Lange's counsel contends that Anchor Glass is cherry-picking entries, ignoring the context for those entries, and "speculat[ing] that the time could have been used more efficiently." (Filing No. 334 at 14). Anchor Glass is correct that "purely clerical or secretarial tasks" are disallowed. *Missouri v. Jenkins*, 491 U.S. 274, 287–88 n.10 (1989); *see Spegon*, 175 F.3d at 553. But Lange is correct that context matters in assessing the reasonableness of fees. *See Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985) ("The entries that the defendants single out, although vague when read in isolation, are not impermissibly vague when viewed in the context of the surrounding documentation."); *see Soleau v. Ill. Dep't of Transp.*, No. 09 C 3582, 2011 WL 2415008, at *8 (N.D. Ill. June 9, 2011) ("Each entry should be considered in context of the surrounding entries."). For example, an entry dated July 14, 2020—"Download EEOC documents produced in response to FOIA request"—appears clerical. But this entry is dated only a few days after counsel submitted their FOIA request and is only one of two entries regarding the FOIA production, so it is reasonable to assume that this time was not spent just downloading documents, but also reviewing the production and ensuring its completeness. Several other references to seemingly clerical tasks were included in block-billed entries, indicating that these tasks were done as part of reasonably necessary legal work (*see* Filing No. 277-9 at 6–7). Taking counsel's billing records as a whole, the Court declines to disallow fees as clerical or duplicative.

Anchor Glass further contends that counsel's billing entries contain vague descriptions, "inscrutable" block-billed entries, and entries unreasonably billed in quarter-hour increments (Filing No. 301 at 24–25). Anchor Glass cites one entry dated January 18, 2022—"Read documents in Sharepoint to answer questions about case"—as too vague. This entry, however, does not evade "meaningful judicial review." *Cumulus Radio Corp. v. Olson*, No. 15-cv-1067, 2015 WL 3407438,

13

at *4 (C.D. Ill. May 27, 2014). Other billing entries surrounding this one provide the context that establishes its reasonableness (Filing No. 277-9 at 7–8 (stating "Researched 7th Cir Caselaw on similarly situated EEs, read filings in Sharepoint" on January 14, 2022, and "Researched 7th Cir Caselaw on 'similarly situated' EEs" on January 17, 2022)).

Counsels' use of block billing and quarter-hour billing likewise does not preclude meaningful judicial review. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). When reviewing block-billed entries, the court must consider whether the entries are "sufficiently detailed to permit adequate review of the time billed to specific tasks" and whether that time was reasonably necessary. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008). Although Anchor Glass cites several block-billed entries, it fails to explain how any of them is insufficiently detailed to permit review. *Contrast Thomas*, 2023 WL 2649490, at *8 (repeatedly using block-billed entries with vague component entries and/or redactions, such that the Court could not review the reasonableness of the entries). Courts have also reduced fees billed in half-hour or quarter-hour increments, but only where the lack of detail in the billing records made the fees appear excessive. *See Jacobson v. SLM Corp. Welfare Benefits Plan*, 669 F. Supp. 2d 940, 945 (S.D. Ind. 2009); *Thomas*, 2023 WL 2649490, at *9. Imm's time entries are more than adequately detailed, and Anchor Glass does not cite even one of Imm's time entries that is so vague that it precludes review or is patently excessive.

Lastly, Anchor Glass argues that the fees incurred by Lange's local counsel, Mr. Swartzentruber, are unreasonable because "local counsel is not required in this Court" and because Mr. Swartzentruber "did not attend or participate in hearing [*sic*], the trial, or any other substantive matter." (Filing No. 301 at 25). Neither of these arguments is persuasive. Although this Court does

14

not require *pro hac vice* counsel to work with local counsel, it is reasonable—if not advisable—to do so. *See* Order Denying Plaintiff's Motion for Extension at 7–8, *Rhyme v. Polley*, No. 1:23-cv-00469-TWP-TAB (S.D. Ind. Dec. 3, 2025) (denying belated motion to extend summary judgment response deadline where plaintiff's counsel, admitted *pro hac vice* without local counsel, failed to timely file a response due to ignorance of local rules). Additionally, although Mr. Swartzentruber did not attend any hearings in this case, an attorney's value to a case cannot be measured solely by time in the courtroom. Mr. Swartzentruber's billing entries show that his time was reasonably expended on this case, so Lange may recover those fees (Filing No. 277-10).

In sum, the Court finds that the hours expended by Lange's counsel are reasonable.

### 3. Adjustment of Lodestar Amount

Lange's counsel asks that the Court grant an upward adjustment of his lodestar fee amount based on the "extraordinarily good results" in this case, among other factors. *See Hensley*, 461 U.S. at 434; (Filing No. 277-1 at 8). Anchor Glass responds that an adjustment is not warranted because "[t]his was an ordinary Title VII case" in which Lange obtained only monetary damages that were later reduced (Filing No. 301 at 25). The Court does not dispute that proving employment discrimination is inherently difficult, but the Court agrees with Anchor Glass that this case was not particularly novel or complex compared to other Title VII race discrimination cases. Additionally, while this case lasted several years, the lodestar amount adequately accounts for counsels' time over those years. As to the degree of success, although a jury awarded Lange over one million dollars at trial, that award was severely lessened by Title VII's damages cap. Upon consideration of all the *Hensley* factors, the Court concludes that no upward adjustment is warranted. Lange is entitled to his reasonable attorneys' fees in the lodestar amount of $409,494.75.

4. **Costs and Expenses**

Lange also requests $7,445.63 in expenses and $9,342.36 in costs (Filing No. 276; Filing No. 277). Anchor Glass does not dispute that the type of expenses and costs requested are recoverable, but it asks that the Court "exclude all expenses and costs . . . relating to Lange's claims for back pay, front pay, or the vacated bench trial." (Filing No. 301 at 26). In light of Lange's complete success on the merits of his Title VII claims, the Court cannot say that this the type of "mixed outcome" case that would warrant a downward adjustment of fees. *See Genesys Cloud Servs., Inc. v. Talkdesk, Inc.*, No. 19-cv-695, 2025 WL 2782824, at *9–10 (S.D. Ind. Sept. 30, 2025) (citing mixed outcome cases) (finding a mixed outcome where both sides succeeded on some claims on summary judgment and at trial, and jury award was only a fraction of requested damages). Lange is therefore entitled to his requested expenses and costs.

C. **Motion to Extend Stay of Execution of Judgment**

The Court entered its Final Judgment on February 11, 2025 (Filing No. 270). Execution of the judgment was stayed for thirty days, Fed. R. Civ. P. 62(a), and the Court extended that stay until November 27, 2025, upon Anchor Glass's unopposed request (Filing No. 310). On November 24, 2025, Anchor Glass filed this second motion to extend the stay until thirty days from the Court's ruling on Lange's motions for fees and costs.

Anchor Glass asserts that an extension of the stay is appropriate because "the total amount of the final judgment, inclusive of attorneys' fees, has not yet been determined," and a stay would give the parties time to "determine the amount of any appeal bond that might be required sufficient to cover the total amount of the judgment, inclusive of attorneys' fees." (Filing No. 326). Specifically, Anchor Glass reports that the parties have been unable to agree on an appeal bond for the $300,000.00 damages award and that a further would allow them to "defer negotiations . . . until the Court issues its attorneys' fee award." *Id.* at 2.

16

The Court is not persuaded that another extension of the stay would assist the parties or the Court in efficiently setting an appeal bond. The parties have had months to confer about an appeal bond, but they have failed to agree. The Court does not expect that the addition of an attorneys' fees award will streamline the parties' negotiations. Stated differently, another extension will do nothing but "defer" the parties' dispute (Filing No. 330 at 2). The Court is also concerned that this second extension may not be the last. The parties' post-judgment discovery disputes (and request for clarification on the resolution of that dispute) delayed briefing on Lange's motions for fees and costs, which is what caused Anchor Glass to request the instant extension.

The Seventh Circuit has instructed district courts to rule on post-judgment motions "as expeditiously as possible" to allow parties to more easily consolidate appeals and prevent the duplication of efforts. *Terket v. Lund*, 623 F.2d 29, 34 (7th Cir. 1980). Accordingly, the Court **denies** Anchor Glass's request for another extension and proceeds with setting an appeal bond.

### D. <u>Appeal Bond</u>

Federal Rule of Civil Procedure 62 provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security," and the stay "takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). A court may waive the bond requirement, *N. Indiana Pub. Serv. Co. v. Carbon Cty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986), but Anchor Glass does not request a waiver of the bond requirement (Filing No. 330 at 3).

The amount of the bond is left to the discretion of the district court. *Weekley v. Transcraft, Inc.*, 121 F.R.D. 398, 399 (N.D. Ind. 1988). The purpose of a supersedeas bond is to protect an appellee from loss should the judgment debtor become insolvent. *Prostyakov v. Masco Corp.*, 2006 WL 3776364, at *1 (S.D. Ind. Dec. 21, 2006). Anchor Glass requests that the Court set an appeal

bond as to the damages award in the amount of $318,000.00, which includes the full damages award plus estimated post-judgment interest (Filing No. 330 at 6). The Court finds $318,000.00 to be a reasonable bond amount for the damages award. As for Lange's award of fees and costs, the Court finds that a bond in the full amount of the fee award, $426,282.74, is reasonable.

With respect to a bond on anticipated appellate fees and costs, that request is not properly before the Court. The purpose of a Rule 62 bond is to preserve the status quo pending appeal and ensure payment of the judgment. Typically, to ensure payment of anticipated appellate costs, parties will request a bond under Federal Rule of Appellate Procedure 7, which is subject to different standards than Rule 62. Lange's attorneys incurred just over $80,000.00 in fees on his first appeal, so his estimate of $150,000.00 for this appeal (Filing No. 330 at 3) does not seem unreasonable. However, Lange did not request a Rule 7 bond, and neither party has briefed whether a Rule 7 bond is appropriate. Accordingly, the Court declines to impose a Rule 7 bond.

In total, the Court sets an appeal bond in the amount of **$744,282.74**, which is reasonable and is sufficient to protect Lange against the risk of nonpayment. *See Olympia Equip. Leasing Co.*, 786 F.2d at 796 ("[O]rdinarily to get a stay [a party] would have had to post a supersedeas bond for the full amount of the judgment."); *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 932 F. Supp. 1147, 1149 (S.D. Ind. 1996) ("An appellant is entitled to a stay of execution of judgment as a matter of right if they post a supersedeas bond in the full amount of the judgment.").

## IV.    CONCLUSION

For the reasons set forth above, Anchor Glass's Motion for Leave to File Surreply (Filing No. 336) is **GRANTED IN PART** as to Section B **and DENIED IN PART** as to Section A. Lange's Bill of Costs (Filing No. 276) and Motion for Attorney Fees (Filing No. 277) are **GRANTED**; and Anchor Glass's Motion to Extend Stay of Execution of Judgment and Taxation of Costs (Filing No. 326) is **DENIED**. Lange is **AWARDED $426,282.74** in reasonable attorneys'

18

fees, expenses, and costs. Anchor Glass is **ORDERED** to post either a surety bond or cash bond securing the amount of **$744,282.74** within **seven (7) days** of the date of this Order. When Anchor Glass does so, execution of the judgment and taxation of costs shall automatically be stayed for the duration of the appeal(s) in accordance with Federal Rule of Civil Procedure 62.

No amended judgment need issue while this case remains on appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 59 (1982).

**SO ORDERED**.

Date: 1/13/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Stephen E. Imm
FINNEY LAW FIRM, LLC
stephen@finneylawfirm.com

David Kuhnz
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
david.kuhnz@ogletree.com

Christopher C. Murray
Ogletree Deakins
christopher.murray@ogletree.com

Ellen Pactor
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
ellen.pactor@ogletree.com

Grant E. Swartzentruber
SWARTZENTRUBER BROWN, ATTORNEYS AT LAW LLC
grant@swartzentruberlaw.com

William Dean Young
Office of the Indiana Attorney General
william.young@atg.in.gov